IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JASON CASADOS and
SUSAN MULVANEY, for themselves
And for all others similarly situated,

        Plaintiffs,

v.                                      No. CIV 10-751 JAP/SMV[1]

SAFECO INSURANCE COMPANY OF
AMERICA, LIBERTY MUTUAL FIRE
INSURANCE COMPANY, and LIBERTY
MUTUAL INSURANCE GROUP, INC.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

DEFENDANTS LIBERTY MUTUAL FIRE INSURANCE COMPANY AND

LIBERTY [MUTUAL] INSURANCE GROUP, INC.'S MOTION TO DISMISS PLAINTIFF

SUSAN MULVANEY'S CLAIMS (Doc. No. 36) (Motion to Dismiss) seeks dismissal of all

eight claims brought by Plaintiff Susan Mulvaney (Plaintiff Mulvaney) against the two Liberty

Mutual Defendants (Liberty Mutual Defendants).[2] Neither this Memorandum Opinion nor the

Motion to Dismiss addresses Plaintiff Jason Casados's claims against Safeco Insurance

Company of America, although the Court observes that Plaintiff Casados's claims against

Defendant Safeco, unlike those asserted by Plaintiff Mulvaney, include an allegation that

_____

[1]This case originally was filed in state court in July 2010 and removed to federal court on August 12, 2010.  (Doc. No. 1.)  The case was stayed while a question was certified to the New Mexico Supreme Court.  (Doc. No. 10.)  The stay was lifted on April 15, 2013.  (Doc. No. 14.)

[2]The two Liberty Mutual Defendants argue that Liberty Mutual Insurance Group, Inc. is not a properly named party but that Plaintiff Mulvaney's allegations are accepted as true for purposes of the Motion to Dismiss.  (Doc. No. 36 at 1 n.1.)

Plaintiff Casados made a request for specific insurance coverage that Defendant Safeco denied. First Amended Complaint at ¶¶ 16, 17.  Defendant Safeco has not filed a Motion to Dismiss.

Plaintiff Mulvaney's RESPONSE TO DEFENDANTS LIBERTY MUTUAL FIRE INSURANCE COMPANY AND LIBERTY [MUTUAL] INSURANCE GROUP, INC.'S MOTION TO DISMISS PLAINTIFF SUSAN MULVANEY [sic] (Doc. No. 41) (Response) concedes that two of eight claims may be dismissed for lack of standing but asserts that the other six claims in the FIRST AMENDED CLASS ACTION COMPLAINT FOR BREACH OF STATUTORY, COMMON LAW, AND CONTRACTUAL DUTIES (Doc. No. 30) (First Amended Complaint)[3] should proceed.  LIBERTY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF SUSAN MULVANEY'S CLAIMS (Doc. No. 42) (Reply) argues that all six remaining claims should be dismissed because Plaintiff Mulvaney lacks standing and/or because Plaintiff Mulvaney fails to state a claim upon which relief can be granted.

After hearing argument from counsel on January 30, 2014 (Doc. No. 50, Minutes), the Court granted Plaintiff Mulvaney's request to file a surreply to address a recently decided New Mexico Court of Appeals case, *Curry v. Great Nw. Ins. Co.*, __ P.3d __, 2013 WL 6145654 (Ct. App. Nov. 20, 2013), that the Liberty Mutual Defendants cited in their Reply. Plaintiff Mulvaney filed PLAINTIFFS' SUR-REPLY TO DEFENDANTS' REPLY TO ITS MOTION TO DISMISS PLAINTIFF MULVANEY [sic], disagreeing with the Liberty Mutual Defendants' interpretation of *Curry* and rearguing in large part the positions contained in Plaintiff Mulvaney's Response.[4]  (Doc. No. 53) (Surreply).

_____

[3]Plaintiffs have not filed a motion to certify a class under Rule 23.
[4]The first five pages of the Surreply specifically address the *Curry* decision, and the last five to six pages primarily reargue the positions already set forth in Plaintiff Mulvaney's Response.  In resolving this Motion, the Court did not find it necessary to discuss *Curry's* holding in terms of whether UM/UIM coverage options and premium information must be included with an insured's policy.

Based on Plaintiff Mulvaney's concession that she does not have individual standing to pursue claims under the Trade Practices and Frauds Act, NMSA 1978, §§ 59A-16-1 through 30 (Count II) or for breach of contract (Count V), Response at 2 n.1, the Court will dismiss the Trade Practices and Frauds Act and breach of contract claims.  In addition, because the Court determines that Plaintiff Mulvaney either lacks standing or fails to state a claim as to the other six claims, the Court will dismiss all remaining claims brought by Plaintiff Mulvaney against the Liberty Mutual Defendants.

### Questions to Certify to the New Mexico Supreme Court

At the January 30, 2014 hearing, the Court asked counsel if they believed any questions should be certified to the New Mexico Supreme Court for resolution before adjudicating the Liberty Mutual Defendants' Motion to Dismiss.  After hearing argument from counsel, the Court requested that each party submit a letter describing questions the party believed should be certified.  The Court reviewed letters from both parties, but concluded that it is not necessary to certify any question to the New Mexico Supreme Court before ruling on the Motion to Dismiss.

### Background Relevant to the Motion to Dismiss

From 1981 through the present, Plaintiff Mulvaney entered into automobile insurance contracts with the Liberty Mutual Defendants, under the terms of which Plaintiff Mulvaney paid premiums for insurance coverage for her vehicle, and the Liberty Mutual Defendants provided insurance coverage.  First Amended Complaint at ¶ 21.  The limits of liability coverage under Plaintiff Mulvaney's Liberty Mutual car insurance policies were $100,000 per person, $300,000 per occurrence (100/300).  *Id.* at ¶ 24.  The pertinent policy issued to Plaintiff Mulvaney by the Liberty Mutual Defendants, the exact dates of which are not alleged in the First Amended

Complaint, included uninsured/underinsured motorist insurance (UM/UIM) coverage, with UM/UIM limits of $25,000 per person, $50,000 per accident (25/50).[5]  *Id.* at ¶¶ 22, 25.

Mulvaney's son was injured in an automobile accident although the date of the accident is not alleged in the First Amended Complaint.  *Id.* at ¶ 26.  In briefing, Plaintiff Mulvaney asserts that the date of her son's automobile accident injury was June 25, 2011.  Response at 2.  This date is within the pertinent policy period of July 29, 2010 to July 29, 2011.  Plaintiff Mulvaney alleges that on April 10, 2013, in relation to her son's car accident, she "affirmatively requested" that the Liberty Mutual Defendants provide uninsured motorists coverage with limits equal to the limits of the liability coverage, *i.e.,*100/300 rather than 25/50.  First Amended Complaint at ¶ 26.  The allegation in the First Amended Complaint admits that the Liberty Mutual Defendants equalized the UM/UIM coverage to 100/300 in response to Plaintiff Mulvaney's request in April 2013.  *Id.*

Notwithstanding the Liberty Mutual Defendants' agreement to equalize Plaintiff Mulvaney's UM/UIM coverage to liability limits, Plaintiff Mulvaney asserts that the Liberty Mutual Defendants did not obtain a valid written rejection of UM/UIM coverage in compliance with NMSA 1978 § 66-5-301, regulation 13.12.3.9 of the New Mexico Administrative Code (NMAC), and New Mexico common law interpreting the statute and regulations, namely *Jordan v. Allstate Ins. Co.*, 149 N.M. 162 (2010) (*Jordan*).  *Id.* at ¶¶ 25.  Plaintiff Mulvaney further

---

[5]Plaintiff Mulvaney attached a copy of  the Liberty Mutual automobile policy at issue to her Response along with two letters, one by Plaintiff Mulvaney's counsel and one by the insurance company.  Response, Exhs. 1, 2, 3.  In ruling on a Rule 12(b) motion, the Court typically examines the complaint itself rather than exhibits attached to briefing.  The First Amended Complaint, however, contains allegations setting out Plaintiff Mulvaney's automobile policy number that matches the policy she attached to her Response, stating a policy period of 7/29/10 to 7/29/11.  Response, Ex. 1.  The Court may consider documents that are critical to the complaint and refer to them, without converting a motion to dismiss to a motion for summary judgment.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).  The Court did not review the correspondence Plaintiff Mulvaney attached to her Response and declines to recast the Motion to Dismiss as one for summary judgment.

contends that despite an affirmative duty to equalize UM/UIM coverage in the absence of a valid rejection of UM/UIM coverage, the Liberty Mutual Defendants acted unlawfully in awaiting a request for equalization and in failing to affirmatively advise an insured of the availability of equalized UM/UIM coverage.[6]  *Id.* at ¶ 27.

### Legal Standards

The Liberty Mutual Defendants urge dismissal on grounds that the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) based on Plaintiff Mulvaney's alleged failure to suffer an injury in fact, *i.e.,* lack of standing, and/or Plaintiff Mulvaney's failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

### I.       *Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)*

Article III, Section 2 of the United States Constitution provides federal courts with jurisdiction over "cases and controversies."  *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 926 (10th Cir. 2005).  "A dispute is an Article III 'Case' or 'Controversy' only if the plaintiff can establish what is known as 'constitutional standing.'"  *Id.* (citation omitted).  Thus, if a plaintiff fails to demonstrate standing, the Court lacks jurisdiction to hear the matter.  *See id.* ("[C]onstitutional standing is necessary to the court's jurisdiction . . . .").

In *Heath v. Bd. of Cnty. Comr's of Boulder Cnty.*, 92 F. App'x 667, 671-72 (10th Cir. Feb. 18, 2004) (unpublished), the Tenth Circuit Court observed that standing restricts a court's jurisdiction.  The Circuit Court further advised:

---

[6]It is difficult to precisely identify how and when the Liberty Mutual Defendants violated Plaintiff Mulvaney's rights.  Instead, the allegations frequently refer to a putative class or quote verbatim statutory provisions and holdings of New Mexico case law.  As an example of the Court's difficulty in obtaining specificity about violations of Plaintiff Mulvaney's rights, the Court asked counsel for Plaintiff Mulvaney at the January 30, 2014 hearing how she was injured by the Liberty Mutual Defendants' failure to reform her expired policies dating back to 1981.  Counsel responded that if Plaintiff Mulvaney had received reformation of her policies to 1981, she somehow would have obtained greater "value" of coverage, even though there are no allegations that she made claims for greater coverage until April 2013.  The notion of obtaining greater value for expired policies appears illusory.

> "Although the standing question is often dressed in the dazzling robe of legal jargon, its essence is simple-what kind of injuries are courts empowered to remedy and what kind are they powerless to address?" *Schaffer v. Clinton*, 240 F.3d 878, 883 (10th Cir.), *cert. denied*, 534 U.S. 992 (2001). "[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982). It depends upon whether the plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.] This is the gist of the question of standing." *Baker v. Carr*, 369 U.S. 186, 204 (1962).

*Id.  See also City of Los Angeles v. Lyons,* 461 U.S. 95, 101-02 (1983) (for purposes of standing, a plaintiff must show she has sustained or is immediately in danger of sustaining some direct injury).

In *Cohen v. Obama*, 359 F. App'x 40, 42 (10th Cir. Dec. 31, 2009) (unpublished), the Tenth Circuit Court set forth the specific elements necessary to show standing:

> [the plaintiff] must establish that: (1) he has suffered an "injury in fact"; (2) there is a causal connection between the injury in fact and the complained of conduct; and (3) it is likely that the injury will be redressed by a favorable decision. *See D.L.S. v. Utah,* 374 F.3d 971, 974 (10th Cir. 2004). And, in order for [the plaintiff] to establish that he has suffered an "injury in fact," he must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."

"The plaintiff bears the burden of establishing standing, and each element of standing must be established with the degree of proof necessary to survive each successive stage of litigation." *Heath*, 92 F. App'x at 672 (citations omitted).  To withstand a Rule 12(b)(1) motion to dismiss for lack of standing, it is not enough to allege an error or violation.  The plaintiff must also sufficiently allege an injury suffered as a consequence of the error.  *Id.*

In analyzing standing, the Court accepts as true all material allegations of the complaint and construes the complaint in favor of the plaintiff. *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) ("'For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'") (citations omitted).  However, "[i]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings but rather must affirmatively appear in the record." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997).

## II.      *Failure to State a Claim Under Rule 12(b)(6)*

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, the court accepts as true all well-pled factual allegations in the complaint, views those allegations in the light most favorable to the non-moving party, and draws all reasonable inferences in the plaintiff's favor. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  The Court is not required, however, to accept as true legal conclusions contained in the complaint. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted).  If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint will be dismissed. *Twombly*, 550 U.S. at 570.

"[M]ere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citation and internal quotation marks omitted).  When evaluating whether a complaint plausibly states a claim, the court disregards "all conclusory statements of law and consider[s] whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Id.*

### Remaining Claims

Plaintiff Mulvaney's remaining claims against the Liberty Mutual Defendants are: (1) Unfair Trade Practice Act (UPA) violations (Count I); (2) Uninsured Motorist Benefits violations (Count III); (3) breach of the implied covenant of good faith and fair dealing (Count IV); (4) request for injunctive relief (Count VI); (5) request for declaratory judgment (Count VII); and (6) request for punitive damages (Count VIII).  First Amended Complaint.

### I.     *UPA Claim (Count I):*

#### A.     <u>Legal Standard</u>

Because the UPA constitutes remedial legislation, courts apply a liberal interpretation to facilitate and accomplish the Act's purpose and intent.  *State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 808 (Ct. App.), *cert. denied*, 105 N.M. 781 (1987).  The UPA prohibits the use of "misleading, false, or deceptive statement[s] made knowingly in connection with the sale of goods or services."  *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 439 (Ct. App.), *cert. denied,* 142 N.M. 434 (2007) (citation omitted).  There are three essential elements to a UPA claim:  (1) a false or misleading oral or written statement/representation; (2) made knowingly in connection with the sale of goods or services in the regular course of a defendant's business; and (3) that was of the type that may, tends to, or does deceive or mislead any person.  *Hicks v. Eller,*

280 P.3d 304, 308 (Ct. App.), *cert. denied*, 294 P.3d 445 (2012) (*citing Lohman*, 142 N.M. at 439).

In addition,"[t]the UPA . . .  imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading."  *Lohman*, 142 N.M. at 445 (citation omitted).  For example, failure to disclose that an automobile was previously used as a rental car was sufficient to state a claim under the UPA.  *Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314 (D.N.M. 2003).

In terms of private remedies, the UPA provides the following:

> A.  A person likely to be damaged by an unfair or deceptive trade practice . . . may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.  Proof of monetary damage, loss of profits or intent to deceive or take unfair advantage of any person is not required. . . .
>
> B.  Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater.  Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

NMSA 1978 § 57-12-10.  Notwithstanding statutory language to the contrary, § 57-12-10(B), a UPA claim need not allege actual monetary or property loss.  *Lohman*, 142 N.M. at 446.

B.     Alleged UPA Violations

Plaintiff Mulvaney quotes provisions of the UPA in the First Amended Complaint, including definitions of "unfair or deceptive trade practices" and examples of types of practices or conduct that might constitute UPA violations, *e.g.,* "representing that the goods or services are

of a particular standard, quality or grade or that the goods are of a particular style or model if they are of another;" "stating that a transaction involves rights, remedies or obligations that it does not involve;" and "fail[ing] to deliver the quality or quantity of goods or services contracted for . . . ."  First Amended Complaint at ¶ 48 (*citing* NMSA 1978 §§ 57-12-2(D)(7), (D)(15), and (D)(17)).  Plaintiff Mulvaney also sets out UPA provisions defining "unconscionable trade practices," including acts of "tak[ing] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree," or engaging in unconscionable acts or practices that "result[ed] in a gross disparity between the value received by a person and the price paid." First Amended Complaint at ¶ 48 (*citing* NMSA 1978 § 57-12-2(E)(1), (2)).

The allegations in the First Amended Complaint specific to Plaintiff Mulvaney are: (1) the Liberty Mutual Defendants failed to provide a proper written rejection of UM/UIM coverage with the pertinent policy, including their failure to endorse, attach, stamp, or otherwise make a written rejection of UM/UIM coverage part of Plaintiff Mulvaney's policy; (2) the Liberty Mutual Defendants failed  to equalize UM/UIM coverage with liability coverage until Plaintiff Mulvaney's affirmative request on April 10, 2013; (3) the Liberty Mutual Defendants failed to provide Plaintiff Mulvaney "the coverage required by law for a period to include several years;" (4) the Liberty Mutual Defendants failed to give Plaintiff Mulvaney a waiver/rejection of UM/UIM coverage and corresponding policy language that was not so complex that a reasonable person would not understand its full impact; (5) the Liberty Mutual Defendants failed to adequately advise Plaintiff Mulvaney that UM/UIM coverage with limits equalized to liability limits coverage was waived or rejected in a manner that could be understood by a reasonable insured; and (6) the Liberty Mutual Defendants failed to reform Ms. Mulvaney's automobile

insurance policy from 1981 to the present to conform to New Mexico law.[7]  First Amended

Complaint at ¶¶ 21, 25, 26, 27, 28, 29, 30, 31, 32, 33.

In briefing, Plaintiff Mulvaney argues that the Liberty Mutual Defendants only equalized

UM/UIM coverage "long after" her son was "gravely injured."  Response at 2.  Plaintiff

Mulvaney also asserts that the Liberty Mutual Defendants did not equalize UM/UIM coverage

unless "confronted by a knowledgeable insured or counsel" and that the Liberty Mutual

Defendants equalized Plaintiff Mulvaney's UM/UIM coverage after her attorney made a request

for equalized limits.  *Id.* at 7; Surreply at 10.  However, nothing in the First Amended Complaint

alleges that Plaintiff Mulvaney requested equalization before April 2013 and that the Liberty

Mutual Defendants denied her request, or that Plaintiff Mulvaney's attorney made any request

for equalization to the Liberty Mutual Defendants prior to April 10, 2013.[8]

C.      Discussion

(1)      *Constitutional Standing*

Whether a plaintiff has Article III standing is threshold question in every federal case.

*Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The Court must decide the standing issue before

addressing the Liberty Mutual Defendants' Rule 12(b)(6) Motion to Dismiss.  *See Robey v.*

*Shapiro, Marianos & Cejda*, 434 F.3d 1208, 1211 (10th Cir. 2006) (the district court should not

have addressed a Rule 12(b)(6) argument before determining the question of constitutional

standing).

---

[7]Although some of the allegations are couched in terms of Plaintiffs as a class or as including all three
Defendants, the Court liberally construed the allegations as pertaining to Plaintiff Mulvaney's claims
against the Liberty Mutual Defendants.
[8]The First Amended Complaint contains a single allegation concerning Plaintiff Mulvaney's request for
equalized UM/UIM coverage: "From the inception of the Policy, Liberty Mutual failed to provide
uninsured motorists coverage with limits equal to the limits of the liability coverage until Ms. Mulvaney
affirmatively requested the same on April 10, 2013."  First Amended Complaint at ¶ 26.

In *Robey*, the plaintiff filed an action against defendants Mortgage Electronic Registration Systems, Inc. (MERS) and a law firm representing MERS, related to a state court foreclosure proceeding, *Id.* at 1209. Robey claimed the defendants violated the Fair Debt Collection Practices Act (FDCPA) by requesting that MERS be awarded reasonable attorney's fees, even though ultimately, no attorney's fees were awarded. The defendants filed a motion to dismiss based on lack of standing arguing Robey did not suffer an injury in fact in the foreclosure action and that Robey failed to state a claim upon which relief could be granted because state law authorized an award of attorney's fees. *Id.*

The Tenth Circuit Court recited the requirements for Article III standing, but further observed that Congress could "expand the range or scope of injuries that are cognizable for purposes of Article III standing by enacting statutes which create legal rights." *Id.* at 1210-11. "[A]s the Supreme Court has explained, 'Congress may enact statutes creating legal rights, the invasion of which creates [constitutional] standing, even though no injury would exist without the statute.'" (citations omitted). The Tenth Circuit Court cited *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) for the proposition that "[t[he . . . injury required by Art. III may exist solely by virtue of statutes creating legal rights," and that this "principle involve[s] Congress' elevating to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1211. In *Robey,* the Tenth Circuit Court recognized that the "injury in fact" analysis for purposes of Article III standing was directly linked to the question of whether Robey suffered a cognizable statutory injury under the FDCPA. *Id.* at 1212. Thus, in a sense, the constitutional standing inquiry collapsed into an examination of the statutory requirements.

The defendants argued that Robey lacked standing to pursue his FDCPA claim because it was uncontested that the defendants never received payment of attorney's fees. Thus, Robey did not suffer any identifiable injury. *Id.* However, the Court noted that the FDCPA provided for liability for attempting to collect an unlawful debt and permitted the recovery of statutory damages up to $1,000.00, in the absence of actual damages. In *Robey*, the Tenth Circuit Court noted case law standing for the proposition that actual damages were not required for standing under the FDCPA. *Id.* Robey's allegation that the debt collector defendant attempted to collect attorney's fees that purportedly were not permitted under Oklahoma law was sufficient to demonstrate an injury in fact and other requirements of constitutional standing. *Id.* at 1212.

Like the FDCPA, the UPA affords liability for certain practices, acts, statements, representations, and omissions. And, similar to the FDCPA, the UPA allows for the recovery of statutory damages, even without an allegation or showing of actual damages. *Lohman*, 142 N.M. at 446. In contrast to the FDCPA, the plain language of the UPA provides for the recovery of damages only to those persons "who suffer any loss of money or property." NMSA 1978 § 57-12-10(B). But, numerous New Mexico state court decisions have held that in the absence of actual losses, a plaintiff still may recover statutory damages in the sum of $100.00. *Pedroza v. Lomas Auto Mall, Inc.*, 663 F. Supp. 2d 1123, 1129, 1131-35 (D.N.M. 2009) (collecting and analyzing New Mexico case law regarding UPA requirements). In *Pedroza*, the New Mexico District Court wrote that if it were "writing on a clean slate, it would hold that the plain language of [§ 57-12-10(B)] requires that a plaintiff seeking damages prove actual loss." *Id.* at 1131. The District Court recognized, however, that it could not second guess New Mexico case law holding that a plaintiff could recover statutory damages under the UPA even with no evidence showing loss of money or property. *Id.* at 1133-35.

Compared to Robey's allegations, Plaintiff Mulvaney's UPA allegations in relation to standing are weak.  Robey, for example, alleged that the defendants violated the FDCPA by attempting to collect impermissible attorney's fees.  *Robey*, 434 F.3d at 1063.  In contrast, Plaintiff Mulvaney generally alleges that the Liberty Mutual Defendants' acts "have been misleading or deceptive," that the Liberty Mutual Defendants' failed to deliver the quality or quantity of services contracted for, and that the Liberty Mutual Defendants' practices resulted in damages.  First Amended Complaint at ¶¶ 40(f), 49, 51.  The majority of the five paragraphs devoted to UPA allegations in Plaintiff Mulvaney's First Amended Complaint simply quote portions of the UPA verbatim.

However, in construing the First Amended Complaint in Plaintiff Mulvaney's favor and in liberally interpreting the remedial intent of the UPA, the Court determines that Plaintiff Mulvaney has standing to pursue the UPA claims against the Liberty Mutual Defendants.

(2)    *Failure to State a Claim*

For Plaintiff Mulvaney's UPA claim to survive a Rule 12(b)(6) motion, the First Amended Complaint must allege a false or misleading oral or written statement/representation or the omission of a material fact, and that the Liberty Mutual Defendants knowingly made the alleged misrepresentations or omissions in the sale of services.  Plaintiff Mulvaney fails to identify any specific false or misleading representations by the Liberty Mutual Defendants with respect to her automobile policies and fails to allege that the Liberty Mutual Defendants knowingly made misrepresentations or material omissions.  *See* First Amended Complaint at ¶¶ 23-33, 47-51.[9]

---

[9]Plaintiff Mulvaney summarily alleges that "Defendants" "knowingly and willfully engaged in unfair trade practices" prohibited by various provisions of the UPA, First Amended Complaint at ¶ 50, but does not identify specific misrepresentations or material omissions knowingly made by the Liberty Mutual Defendants.

In parts of the First Amended Complaint, Plaintiff Mulvaney alleges that the Liberty Mutual Defendants did not include a written rejection of UM/UIM coverage that complied with legal requirements and the *Jordan* mandate, each time they issued a policy to Plaintiff Mulvaney with UM/UIM limits of 25/50.  *Id.* at ¶ 25.  In her Response, Plaintiff Mulvaney appears to imply that in accordance with *Jordan*, the Liberty Mutual Defendants were legally obligated to include a written rejection of UM/UIM coverage with Plaintiff Mulvaney's policies, dating back to 1981, *i.e.,* for policies that long ago expired and under which Plaintiff Mulvaney made no claims. *See* Response at 2, 3 ("Liberty Mutual only reformed its policy for one policy period . . . .").

*Jordan*, which held that a rejection of UM/UIM coverage equal to the limits of liability coverage was valid only if obtained in writing and made part of the insurance policy that was delivered to the insured, was issued in October 2010.  *Jordan*, 149 N.M. at 168.  It is true that the *Jordan* rulings have retroactive application, *id..* at 170-71, but the Liberty Mutual Defendants could not have *knowingly* violated the holdings of *Jordan* with respect to Liberty Mutual policies that pre-dated the October 2010 *Jordan* decision.  The policy covering Plaintiff Mulvaney's son's accident was issued in July 2010, months before *Jordan* was decided.   Moreover, in the absence of allegations that Plaintiff Mulvaney ever made a claim to the Liberty Mutual Defendants for UM/UIM coverage equal to liability coverage before her son's accident that was denied, Plaintiff Mulvaney did not sufficiently allege that her automobile policies contained a *material* omission with respect to equalization of UM/UIM coverage.

In addition, there are no allegations in the First Amended Complaint that the Liberty Mutual Defendants failed to provide the required UM/UIM coverage for the policy period of 7/29/10 to 7/29/11.  Plaintiff Mulvaney argues in her Response, without specificity, that the Liberty Mutual Defendants "only equalized coverage for a limited policy period."  Response at

15

8. Even in briefing, Plaintiff Mulvaney does not identify any part of the policy period for which the Liberty Mutual Defendants failed to equalize the UM/UIM coverage and does not argue that she made requests for equalization on specific dates that the Liberty Mutual Defendants denied. *See* First Amended Complaint at ¶ 26 (Plaintiff Mulvaney requested equalization in April 2013 that was granted).

Plaintiff Mulvaney quotes parts of the UPA in generally alleging that "Defendants failed to deliver the quality or quantity of services contracted for by Plaintiffs by failing to afford insurance benefits under the UM/UIM coverage of Plaintiffs' policies." *Id.* at ¶ 49. But, Plaintiff Mulvaney does not allege how the Liberty Mutual Defendants denied her "the quality or quantity of services" for which she contracted. Also, without any specificity, Plaintiff Mulvaney makes summary allegations that "Defendants . . . knowingly and willfully engaged in unfair trade practices" that resulted in damages to "Plaintiffs" and the "Class." *Id.* at ¶¶ 50, 51. Nowhere does Plaintiff Mulvaney explain a factual basis for claiming the Liberty Mutual Defendants' conduct was knowing and willful.

Plaintiff Mulvaney's conclusory allegations and recitation of UPA provisions are more akin to "labels and conclusions," that are insufficient to "nudge[ ] her claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The allegations in the First Amended Complaint do not supply a factual basis to support Plaintiff Mulvaney's claim that the Liberty Mutual Defendants violated provisions of the UPA in relation to her. In other words, there is insufficient factual content to allow the Court to draw the reasonable inference that the Liberty Mutual Defendants are liable for UPA violations with respect to Plaintiff Mulvaney. *See, e.g., Iqbal,* 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") Thus, the Court concludes that

Plaintiff Mulvaney's UPA cause of action (Count I) against the Liberty Mutual Defendants fails

to state a claim and will be dismissed.

## II.      *Uninsured Motorist Benefits Claim (Count III):*

NMSA 1978 § 66-5-301 sets forth requirements regarding uninsured motorists'

insurance.  Although this statute states that insureds have a right to reject UM/UIM coverage, it

does not specify the form or manner for an effective rejection of UM/UIM coverage.  *Curry*,

2013 WL 6145654, at *3.  In *Curry,* the New Mexico Court of Appeals explained:

> NMSA 1978, Section 66–5–301 (1983) and its implementing
> regulation, now codified as 13.12.3.9 NMAC (5/14/2004), govern
> UM/UIM insurance coverage in New Mexico. The New Mexico
> Supreme Court construes the statute liberally, and the default rule
> is to provide the maximum possible amount of UM/UIM coverage.
> Any exception to that rule is strictly construed to protect the
> insured. Section 66–5–301 embodies a public policy of New
> Mexico that UM/UIM coverage be provided with every automobile
> liability insurance policy issued in this state. For that reason, "the
> insurer may not exclude UM/UIM coverage from an automobile
> liability policy unless it has offered it to the insured, and the
> insured has exercised the right to reject the coverage through some
> positive act."

*Id.* at *2 (internal citations omitted).  In *Jordan*, after examining the pertinent statute, regulation,

and case law, the New Mexico Supreme Court determined the form and manner that offers and

rejections of UM/UIM coverage must take.  *Jordan*, 149 N.M. at 167-69.

In her First Amended Complaint, Plaintiff Mulvaney's Count III makes a "Claim for

Uninsured Motorists Benefits."  However, the allegations in Count III do not specifically identify

Plaintiff Mulvaney or the Liberty Mutual Defendants.  Instead, the paragraphs under Count III

summarily allege that "Defendants have wrongfully and unlawfully denied UM/UIM coverage to

members of the Class[]" and that "members of the Class are entitled to UM/UIM coverage in an

amount equal to liability limits."  First Amended Complaint at ¶¶ 58, 59.  Other paragraphs of

the First Amended Complaint, incorporated by reference into Count III, allege that the Liberty Mutual Defendants issued the UM/UIM policy to Plaintiff Mulvaney with 25/50 limits and failed to equalize UM/UIM coverage notwithstanding requirements of § 66-5-301.  *Id.* at ¶¶ 25, 26, 57.

The Liberty Mutual Defendants argue that Plaintiff Mulvaney lacks standing to assert a claim under § 66-5-301 or for uninsured motorist benefits because she did not demonstrate an actual, concrete, and particularized injury with respect to this statutory provision.  Motion at 9-10.  In addition, the Liberty Mutual Defendants' Reply observes that Plaintiff Mulvaney's Response did not directly address issues of standing or failure to state a claim with respect to the Count III uninsured motorist benefits claim.  Reply at 12.

Plaintiff Mulvaney asserts generally that the Liberty Mutual Defendants "ignore[] for decades it did not provide [her] with the coverage to which she was entitled by law[,] and that "[a]fter clear direction from the New Mexico Supreme Court, Liberty Mutual failed to advise Ms. Mulvaney and other insureds that reformed coverage was available to them and failed to retroactively reform such coverage."  Response at 9.  Plaintiff Mulvaney also contends that she has standing generally "as she suffered a concrete injury in fact that is actual, fairly traceable to the challenged action of Defendant Liberty Mutual, and it is likely that the injury will be redressed by a favorable decision."  *Id.* at 10.  However, she does not allege a particularized or concrete injury that she suffered with respect to the uninsured motorist benefits claim, nor does she allege that she was denied the "maximum possible amount of UM/UIM coverage" as provided in § 66-5-301.

The continuing problem with Plaintiff Mulvaney's filings and pleadings is that they contain summary legal conclusions and recite requirements of law rather than provide specific factual allegations of the Liberty Mutual Defendants' unlawful activity.  *See Twombly*, 550 U.S.

at 555 (a plaintiff must offer specific factual allegations to support each claim).  Moreover, in evaluating whether Plaintiff Mulvaney has standing or whether she stated a claim, the Court focuses on and analyzes the allegations within the complaint after taking those allegations as true, rather than including arguments by counsel in the briefs.  *See Phelps*, 122 F.3d at 1326 (standing must affirmatively appear in the record).  *See also Kearney v. Dimanna*, 195 F. App'x 717, 721 n.2 (10th Cir. Aug. 30, 2006) (unpublished) (courts are limited to assessing the legal sufficiency of the allegations contained within a complaint; it is axiomatic that briefing does not amend a complaint); *Initiative Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (court evaluates issue of standing by analyzing the complaint), *cert. denied*, 549 U.S. 1245 (2007).  Thus, Plaintiff's more expansive argument in her Response and in her Surreply provide no assistance in deciding the Rule 12(b) issues.

Considering the allegations in the First Amended Complaint and drawing all inferences in favor of the non-movant, the Court sees only one event in which Plaintiff Mulvaney requested equalization of UM/UIM coverage.  Plaintiff Mulvaney concedes that upon her request for equalized coverage in April 2013, the Liberty Mutual Defendants promptly provided that coverage.  While Plaintiff Mulvaney contends that she was entitled to have decades of policies reformed in accordance with *Jordan*, she made no allegation that from 1981 to the present she submitted claims to the Liberty Mutual Defendants for UM/UIM coverage or that equalization was denied.

With respect to the uninsured motorist benefits claim, the Court finds that Plaintiff Mulvaney lacks standing.  Based on the Court's review of the First Amended Complaint, it does not find that Plaintiff Mulvaney suffered an "injury in fact" in relation to uninsured motorist benefits, that there was a causal connection between an alleged injury in fact and the complained

of conduct, and/or that it is likely that a decision by this Court could redress any possible injury under the applicable statute.   Therefore, because Plaintiff Mulvaney lacks constitutional standing to pursue the Count III uninsured motorist benefits claim, the Court will dismiss that claim.

Alternatively, even if Plaintiff Mulvaney's allegations could be interpreted to confer Article III standing, the Court would grant the motion to dismiss for failure to state a claim. There are no allegations to show that Plaintiff Mulvaney was denied uninsured motorist benefits under § 66-5-301, that the Liberty Mutual Defendants violated a provision of § 66-5-301 by failing to pay Plaintiff Mulvaney UM/UIM benefits, or that she was legally entitled to recover damages from an uninsured at-fault driver in a sum that the Liberty Mutual Defendants failed to pay under the pertinent policy.

**III.     *Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Count IV)***

"[E]very contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *WXI/Z Sw. Malls v. Mueller*, 137 N.M. 343, 350 (Ct. App.) (citation omitted), *cert. denied,* 137 N.M. 454 (2005).  *See also Salas v. Mountain States Mut. Cas. Co.*, 145 N.M. 542, 546 (Ct. App. 2009) ("[W]ith insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract.") (citation omitted).  An insurer has the duty to inform an insured of the insured's rights and obligations under the insurance policy, including the availability of UM/UIM coverage and limits.  *See id.* at 546-47 (citations omitted).

In order to demonstrate a breach of the implied covenant of good faith and fair dealing, there must be a showing that "one party wrongfully and intentionally used the contract to the

detriment of the other party." *WXI/Z Sw. Malls*, 137 N.M. at 350 (citation omitted). "Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 438 (1994). In addition, there must be a showing of an injury because the cause of action "requires that neither party do anything that will *injure* the rights of the other to receive the benefit of their agreement." *Sanders v. FedEx Ground Package Sys., Inc.* 144 N.M. 449, 452 (2008) (citation omitted) (emphasis added).

Plaintiff Mulvaney generally alleges that "Defendants have a duty to act in good faith and to treat policyholders in a fair manner, and to act honestly . . . ." First Amended Complaint at ¶ 61. Plaintiff Mulvaney summarily alleges that "Defendants have breached their duty of good faith and fair dealing causing damages to the Plaintiffs and the Class in an amount to be proven at trial, and warranting the imposition of punitive damages . . . ." First Amended Complaint at ¶ 62.

In briefing, Plaintiff Mulvaney argues that the Liberty Mutual Defendants violated and continue to violate the duties imposed by *Jordan* and that they "deceptively prevented [their] insureds from understanding the contractual benefits available under the policy . . . ." Response at 15. Plaintiff Mulvaney asserts that she was prevented from understanding the coverage available to her. *Id.* at 15-16.

Plaintiff Mulvaney also contends that even after *Jordan*, the Liberty Mutual Defendants continued to provide policies without the "mandated equalized coverage, and which misinform insureds as to the amount of coverage available under the policy." *Id.* at 16. Plaintiff Mulvaney characterizes the Liberty Mutual Defendants' conduct as a "misinformation campaign intended to withhold and mislead an insured." *Id.*

21

The First Amended Complaint alleges no actual or particularized injury in fact to demonstrate Article III standing with respect to the breach of the covenant of good faith and fair dealing claim.  Plaintiff Mulvaney merely states a legal conclusion that the Liberty Mutual Defendants breached their duty and caused damages to both Plaintiffs and the purported Class. As noted above, the Court is not required to accept as true any legal conclusions set out in a complaint.  *See, e.g., Hackford v. Babbitt,* 14 F.3d 1457, 1465 (10th Cir. 1994) (the court is not obligated to accept a plaintiff's "conclusory allegations, unwarranted inferences, or legal conclusions."); *Burnett*, 706 F.3d at 1235 (same).

Plaintiff Mulvaney's other allegations or arguments concerning injuries are the same as discussed above in reference to other claims, *i.e.,* that the Liberty Mutual Defendants should have provided equalization or reformation of policies beginning in 1981, that the policy at issue did not contain equalized UM/UIM coverage, and that a valid rejection of equalized UM/UIM coverage was not delivered as part of the pertinent policy.  However, the First Amended Complaint concedes that when Plaintiff Mulvaney requested equalization in relation to her son's accident, the Liberty Mutual Defendants provided the coverage.

The Court finds that Plaintiff Mulvaney has not alleged an injury in fact or a causal connection between an injury in fact and the complained of conduct sufficient to confer constitutional standing for the claim of breach of the implied covenant of good faith and fair dealing.  In other words, Plaintiff Mulvaney did not allege that the Liberty Mutual Defendants wrongfully and intentionally used her automobile policy to her detriment.  Instead, the allegations establish that the Liberty Mutual Defendants provided the coverage that was required upon Plaintiff Mulvaney's request.  Because Plaintiff Mulvaney lacks constitutional standing to

pursue the Count IV breach of the implied covenant of good faith and fair dealing claim, the Court will dismiss that claim.

Alternatively, even if Plaintiff Mulvaney's allegations could be interpreted to confer Article III standing, the Court would grant the motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  There are no allegations to show that the Liberty Mutual Defendants sought to prevent the contract's performance or that they withheld the contract's benefits from Plaintiff Mulvaney. In addition, Plaintiff Mulvaney did not allege that the Liberty Mutual Defendants injured *her* rights to receive certain benefits in her policy.  The allegations confirm that the Liberty Mutual Defendants provided the maximum UM/UIM limits available to Plaintiff Mulvaney.

**IV.**     ***Requests for Injunctive Relief and a Declaratory Judgment (Counts VI, VII)***

      A.     <u>Plaintiff Mulvaney's Allegations and Arguments</u>

The First Amended Complaint alleges that "Plaintiffs and the Class are entitled to injunctive relief requiring that Defendants be enjoined from continuing practices that violate the duties as well as the contractual and legal obligations owed to the Plaintiffs and the Class."  First Amended Complaint at ¶ 68.  The First Amended Complaint further asserts that "Defendants must be compelled to stop their practice of failing to provide UM/UIM coverage with limits equal to the limits of liability coverage, including stacked coverage, where they have failed to obtain a valid waiver/rejection of the same."  *Id.* at ¶ 69.

The First Amended Complaint does not cite any statutory authority as a basis for the requested injunctive relief.  However, in briefing, Plaintiff Mulvaney refers to the UPA in arguing that a person who is damaged by an unfair or deceptive trade practice may be granted an injunction in accordance with § 57-12-10(A).  Response at 11.  Plaintiff Mulvaney argues that

she has a "concrete, legal interest" in having the Liberty Mutual Defendants "stop [their] practice of misleading insureds, including Plaintiff Mulvaney, about the amount and availability of coverage under each Liberty Mutual policy." *Id.* at 18. According to Plaintiff Mulvaney, she and putative Class members have not been advised of the available reformed insurance coverage "for all applicable periods." *Id.* "The irreparable harm that this imposes on the unwary consumer of insurance is profound since there are likely thousands (or tens of thousands) of insureds who have not been provided equalized coverage, will not realize they have coverage, and will not pursue the matter further, with Liberty Mutual or by hiring an attorney." *Id.*

With respect to the request for a declaratory judgment, the First Amended Complaint summarily alleges the existence of an "actual controversy between the parties thereby rendering declaratory relief proper pursuant to Rule 1-057 NMRA and the New Mexico Declaratory Judgment Act, NMSA 1978 §§ 44-6-1 through -15 (1975)." First Amended Complaint at ¶ 71. "Plaintiffs and the Class" contend they are entitled to a declaratory judgment to establish "the respective rights and obligations of the parties" in relation to the claims. *Id.* at ¶ 72.

Plaintiff Mulvaney argues that she or the putative class is entitled to a declaratory judgment because the Liberty Mutual Defendants "continue[] to defy what is required by *Jordan* and its predecessors." Response at 21. "Declaratory judgment is proper to establish that Liberty Mutual has the obligation to properly inform its insureds as to the amount of coverage available for purchase and actually purchased, and to retroactively reform UM/UIM coverage." *Id.*

B.     The Liberty Mutual Defendants' Positions

The Liberty Mutual Defendants ask that Plaintiff Mulvaney's claims for injunctive and declaratory relief be dismissed for lack of standing or failure to state a claim.  Motion at 15, 17.  With respect to the request for injunctive relief, the Liberty Mutual Defendants assert that "[i]njunctions are harsh and drastic remedies" to be used only in extreme cases of pressing necessity and only upon a showing of "irreparable injury for which there is no adequate and complete remedy at law."  *Id.* at 15 (*citing Padilla v. Lawrence*, 101 N.M. 556, 562 (Ct. App. 1984)).  *See also Scott v. Jordan*, 99 N.M. 567, 572 (Ct.App. 1983) (same).  The Liberty Mutual Defendants contend there is no "irreparable injury" for which injunctive relief should issue.  In addition, the Liberty Mutual Defendants rely on Judge James O. Browning's opinion in *Valdez v. Metro. Prop. Cas. Ins. Co.*, No. CIV 11-507 JB/KBM, 2012 WL 1132414, at *24 (D.N.M. Mar. 31, 2012) (unpublished) for the position that Plaintiff Mulvaney's alleged injury was "not actual and substantial, because [the plaintiff] would both have to be involved in an accident with an uninsured motorist and [the insurer] would have to reject a claim for equal limits coverage for the [plaintiff] to be injured."

The Liberty Mutual Defendants further contend the requested declaratory judgment relief should be analyzed in accordance with the federal Declaratory Judgment Act, rather than the analogous state declaratory judgment statute.  Motion at 17.  A party seeking relief under the federal Declaratory Judgment Act first must show there is a "case or controversy," and the Court then determines if it has discretion to hear the action.  *Id.* (*citing Public Serv. Co. v. City of Albuquerque*, 755 F. Supp. 1494, 1496 (D.N.M. 1991)).  *See Starko, Inc. v. Presbyterian Health Plan, Inc.*, 276 P.3d 252, 279 (Ct. App. 2011) (noting the general rule "that the granting of declaratory relief is discretionary, under both the federal and the state acts. Whether such

jurisdiction is to be entertained rests in the exercise of sound judicial discretion by the [district] court, and its decision will not be disturbed on appeal, in the absence of a clear showing of abuse of that discretion."), *cert. denied*, 293 P.3d 184 (2012).

The Liberty Mutual Defendants rely on *Downey v. Am. Nat'l Prop. And Cas. Co.*, No. Civ 11-587 MCA/KBM, at *12 (D.N.M. Mar. 29, 2013) (Doc. 89) (unpublished) in support of their argument that Plaintiff Mulvaney failed to demonstrate the existence of a case or controversy. In *Downey*, Chief Judge M. Christina Armijo held that, because the plaintiffs could not show that there was a dispute about the UM/UIM benefits owed to them following an accident, there was no case or controversy for purposes of the request for declaratory judgment relief. The Liberty Mutual Defendants contend that this case is factually similar to *Downey* in that no UM/UIM benefits are owed to Plaintiff Mulvaney in view of the Liberty Mutual Defendants' agreement to equalize UM/UIM coverage.

C.     Discussion

Although Judge Browning's opinion in *Valdez* is not binding precedent, the Court finds it persuasive. In *Valdez*, multiple plaintiffs were named insureds in insurance policies issued by six defendant insurance companies. *Valdez*, 2012 WL 1132414, at *1. The policies afforded uninsured motorist coverage with limits that were "less than the relevant liability limits in the same policy without a valid written rejection of equal uninsured motorist coverage." *Id.* The *Valdez* plaintiffs alleged that the defendants failed to comply with the requirements of *Jordan* and *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 149 N.M. 157 (2010), because the insurance companies did not provide the plaintiffs with full and adequate information about their legal options when they purchased their uninsured motorist coverage. *Id.* at *2.

Similar to Plaintiff Mulvaney's allegations in her First Amended Complaint, the *Valdez* plaintiffs alleged that the defendant insurance companies were violating a duty to retroactively provide full and complete information about all UM/UIM coverage available to them, that defendants engaged in unconscionable trade practices under the UPA, that defendants had issued and renewed thousands of policies that did not and do not comply with *Jordan*, and that none of the defendants would comply with the New Mexico Supreme Court's mandate unless ordered to do so.  *Id.*  As part of their class allegations, the *Valdez* plaintiffs asserted that each defendant: (1) failed to affirmatively offer the insured equal UM/UIM coverage together with the *Jordan* menu of information at the point of sale; (2) failed to obtain written rejections in accordance with *Jordan* and in accordance with *Jordan's* retroactive application; (3) failed to "unilaterally and retroactively reform every . . . policy issued, or renewed, with less than equal" UM/UIM limits; and (4) failed to "unilaterally notify each insured" of the insured's entitlement to have such policies reformed in instances where equalized UM/UIM coverage was not provided.  *Id.*

The *Valdez* plaintiffs sought injunctive relief under the UPA and a declaratory judgment. They requested, *inter alia*, a declaratory judgment requiring retroactive reformation of all UM/UIM policies issued to the plaintiffs and the class members since May 2004 and equalization of UM/UIM limits if the policies did not already do so.  The *Valdez* plaintiffs also sought injunctive relief requiring each defendant to immediately notify the insureds who were issued less than equalized UM/UIM coverage since May 2004 that their policies were retroactively reformed at equalized coverage.  *Id.* at *3.

One *Valdez* defendant insurer filed a motion to dismiss arguing, in part, that the plaintiffs had not stated a claim under the UPA because they did not allege irreparable harm and that there was no actual controversy to warrant a declaratory judgment.  *Id.* at *1.  Judge Browning

concluded that the *Valdez* plaintiffs did not allege irreparable harm for purposes of their injunctive relief claim under the UPA and that any declaratory judgment action was not ripe.  *Id.* at *21, *27.  Thus, Judge Browning dismissed the Valdez plaintiffs' claims against the one defendant insurer.

With respect to the claim for injunctive relief under the UPA, the Judge Browning was not convinced that the *Valdez* plaintiffs had adequately pled irreparable harm, because their complaint acknowledged that any policy that did not comply with *Jordan* would be retroactively reformed without requiring the payment of additional premiums.  *Id.* at *27.  Based on the allegations in *Valdez*, Judge Browning concluded that any policy issued in violation of *Jordan*, would be retroactively reformed.  Therefore, no class member would suffer irreparable harm, and there was an adequate remedy at law.

Judge Browning further reasoned that any injury suffered by the *Valdez* plaintiffs was not "actual and substantial," because any class member would "both have to be involved in an accident with an uninsured motorist and [the defendant insurer] would have to reject a claim for equal limits coverage for the class member to be injured."  *Id.*  Judge Browning also observed that the holding of *Jordan* was specifically intended to ensure the equal treatment of similarly situated insureds.  Any class member whose policy was issued in violation of *Jordan* would not be irreparably injured.  Thus, the *Valdez* complaint did not state a claim for injunctive relief under the UPA.  *Id.*

(1)     *Plaintiff Mulvaney's Request for Injunctive Relief:*

The Court determines first, as it must, that Plaintiff Mulvaney has standing to proceed with her claim for injunctive relief under the UPA.  The UPA expressly provides that a person "likely to be damaged" under the UPA may be granted an injunction "under the principles of

28

equity and on terms that the court considers reasonable."  NMSA 1978 § 57-12-10(A).  Because

the constitutional standing inquiry tends to morph into an evaluation of the UPA's statutory

requirements, the Court finds that Plaintiff Mulvaney sufficiently satisfied standing requirements

for purposes of her injunctive relief claim under the UPA.

However, the Court concludes that Plaintiff Mulvaney failed to state a claim under Rule

12(b)(6) in support of her request for injunctive relief under the UPA.  Similar to the deficient

allegations in *Valdez*, Plaintiff Mulvaney's First Amended Complaint alleges that because

Defendants did not comply with the requirements of New Mexico law, "UM/UIM coverage with

limits equal to the limits of liability coverage must be read into Plaintiffs' automobile insurance

policies and the policies reformed to conform to New Mexico law."  First Amended Complaint at

¶ 33.  Thus, to the extent that Plaintiff Mulvaney could sufficiently allege that her automobile

policies were issued in violation of the *Jordan* mandate, there is an adequate and complete

remedy at law based on the requirements of *Jordan*.

More importantly, Plaintiff Mulvaney did not and cannot allege that she suffered an

irreparable injury for purposes of injunctive relief.  It is clear from the allegations in the First

Amended Complaint that Plaintiff Mulvaney made a single request for equalized UM/UIM

coverage, and in response the Liberty Mutual Defendants agreed to equalize coverage.

Moreover, any allegation of continuing or future wrongdoing by the Liberty Mutual Defendants

in relation to Plaintiff Mulvaney is too speculative to justify injunctive relief under the UPA.  In

addition, Plaintiff Mulvaney's assertion that she has a "concrete legal interest in having Liberty

Mutual stop its practices of misleading insureds" (Response at 18), is a class action allegation in

a case where class certification has not been granted.  Accordingly, the Court concludes that

Plaintiff Mulvaney failed to state a claim for injunctive relief under the UPA, and the Count VI injunctive relief claim will be dismissed.

### (2)   Plaintiff Mulvaney's Request for a Declaratory Judgment

While the Liberty Mutual Defendants assert that Plaintiff Mulvaney's declaratory judgment request should be analyzed under the Federal Declaratory Judgment Act, it appears to make little difference whether the federal or state statute applies. "The Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1982) in language nearly identical to the New Mexico Declaratory Judgment Act, . . ., requires an "actual controversy" between the parties . . . ." *Johnson v. Lally,* 118 N.M. 795, 798 (Ct. App.), *cert. denied*, 119 N.M. 20 (1994).

In *Valdez*, while the defendant insurer did not challenge the holding of *Jordan*, the insurer disagreed that the *Valdez* plaintiffs had demonstrated a "concrete risk of future harm," based on the pleadings. *Valdez*, 2012 WL 1132414, at *27. Similar to Plaintiff Mulvaney, the *Valdez* plaintiffs alleged that unless the Court reformed every policy, none of the defendant insurers would "unilaterally and voluntarily conform with *Jordan* . . . ." *Id.* The defendant insurer asserted that no concrete action had taken place in the *Valdez* lawsuit "requiring the application of the policies in question and that, instead the [*Valdez* plaintiffs] seek a declaration 'that insurers, in the future, will violate *Jordan* . . . by refusing to honor claims for full policy limits on policies that have been automatically reformed.'" *Id.*

Judge Browning noted that the *Valdez* plaintiffs sought "to determine the issue of coverage in a vacuum – where the [*Valdez* plaintiffs] had not alleged that any policyholder has been involved in an accident with an uninsured motorist, where [the defendant insurer] is not alleged to have denied equal limits coverage to anyone who's [sic] policy was not in compliance with *Jordan* . . . ." *Id.* at 28. Judge Browning found that the *Valdez* Plaintiffs were attempting to

obtain relief "in readiness" for contingent events that had not occurred.  Ultimately, Judge

Browning concluded that the plaintiffs' request for declaratory relief was not ripe.  *Id.* at 29.

> The [*Valdez*] Plaintiffs ask the Court to decide now whether their
> policies will be retroactively reformed so that, in later litigation
> over coverage, if such litigation should ever arise, [the defendant
> insurer] will not be able to argue that they have rejected equal
> limits uninsured motorist coverage.  The Supreme Court has
> rejected such a tactic as not ripe for decision.

*Id.*  "Regardless how well-founded the [*Valdez*] Plaintiffs['] concerns about [the defendant

insurer] may be, speculation about how it might deal with policyholders in the future does not

present a concrete case or controversy."  *Id.*

In *Downey*, Judge Armijo similarly determined that the plaintiffs' complaint for

declaratory relief failed to allege facts sufficient to support a case or controversy regarding the

plaintiffs' underinsured motorist bodily injury (UIMBI) policy limits.  *Downey*, No. CIV 11-587

(Doc. No. 89 at 12).  The *Downey* plaintiffs failed to allege that they suffered injuries in excess

of their UIMBI policy limits, that they requested and were denied additional UIMBI benefits, or

that the insurance company failed to handle their claim for additional UIMBI benefits consistent

with *Jordan* requirements.  *Id.*  Like Plaintiff Mulvaney's allegations, the *Downey* plaintiffs

alleged in a conclusory fashion that there was an actual controversy and that the plaintiffs were

"persons interested" as defined by the New Mexico Declaratory Judgment Act.  *See id.*  Judge

Armijo concluded that the allegations in plaintiffs' complaint for declaratory relief did not

present a case or controversy.

This Court reaches the same conclusion with respect to Plaintiff Mulvaney's request for

declaratory relief.  Plaintiff Mulvaney provides a conclusory allegation that an actual controversy

exists, First Amended Complaint at ¶ 71, but appears to seek a declaration about what the Liberty

Mutual Defendants must do on some unspecified later date, depending on unknown future

occurrences.  Plaintiff Mulvaney summarily argues in her brief that the Liberty Mutual
Defendants continue "to make inadequate offers of coverage, failing to provide all information
required by law in Plaintiff Mulvaney's policy, even <u>after</u> *Jordan* was issued . . . ."  Response at
20 (emphasis in original). However, there is no direct allegation in Plaintiff Mulvaney's First
Amended Complaint that, subsequent to *Jordan*, the Liberty Mutual Defendants failed to provide
Plaintiff Mulvaney with proper equalized UM/UIM coverage.  Plaintiff Mulvaney speculates in
her Response that "there is every reason to believe that Liberty Mutual will continue to violate
what is required under New Mexico law" based on previous alleged refusals to comply with the
law.  *Id.*  The *likelihood* of such violations is not sufficient to present an actual controversy for
purposes of declaratory relief.

In addition, while Plaintiff Mulvaney makes an assertion that the Liberty Mutual
Defendants continue to violate the *Jordan* rulings, there is no allegation that the Liberty Mutual
Defendants continue to deny required coverage to Plaintiff Mulvaney or how they continue to
violate the *Jordan* mandate with respect to her policies.  The possibility of future injury to
Plaintiff Mulvaney is speculative.

Plaintiff Mulvaney argues that her "coverage still has not been fully equalized beyond a
limited policy period" and that she "is entitled to a judgment declaring the full scope of the
coverages available to her and putative Class members."  *Id.* at 21.  However, there is no
allegation that Plaintiff Mulvaney was due additional coverage that was denied, either in the
distant past or after her son's accident.  But, there is an allegation that the Liberty Mutual
Defendants provided equalization for the pertinent policy upon Plaintiff Mulvaney's request.

While the Court does not find that Plaintiff Mulvaney lacks standing to pursue
declaratory relief, the Court concludes that her declaratory relief claim is not ripe.  "The basic

purpose of ripeness law is and always has been to conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems." *Titus v. City of Albuquerque*, 149 N.M. 556, 569 (Ct. App. 2011) (internal quotation marks and citation omitted), *cert. denied*, 150 N.M. 667 (2011).

After reviewing Plaintiff Mulvaney's First Amended Complaint and considering her arguments in her briefing, the Court decides that Plaintiff Mulvaney's allegations do not present real or imminent problems that the Court can resolve.  In other words, the allegations refer to abstract or speculative violations that would require premature adjudication.  *See City of Sunland Park v. Macias,* 134 N.M. 216, 222 (Ct. App.) ("The ripeness doctrine exists to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."), *cert. denied*, 134 N.M. 179 (2003).  Because Plaintiff Mulvaney's request for a declaratory judgment does not present an actual case or controversy, the Court will dismiss her Count VII claim for lack of ripeness.

## V.      *Requests for Punitive Damages (Count VIII)*

Based on Plaintiff Mulvaney agreement that she had no standing to pursue two of her claims and the Court's determination that all other claims are subject to dismissal, there are no remaining legal theories upon which punitive damages could be awarded.  *See Covert v. Allen Grp., Inc.*, 597 F. Supp. 1268, 1270 (D. Colo. 1984).  Therefore, the Court will dismiss Plaintiff Mulvaney's Count VIII claim for punitive damages against the Liberty Mutual Defendants.

## Conclusion

Because of the Court's ruling disposing of all of Plaintiff Mulvaney's claims, Plaintiff Mulvaney and the Liberty Mutual Defendants will be dismissed from this lawsuit.  Plaintiff

Jason Casados's claims against remaining Defendant Safeco Insurance Company of America will proceed.

IT IS ORDERED THAT DEFENDANTS LIBERTY MUTUAL FIRE INSURANCE COMPANY AND LIBERTY [MUTUAL] INSURANCE GROUP, INC.'S MOTION TO DISMISS PLAINTIFF SUSAN MULVANEY'S CLAIMS (Doc. No. 36) is GRANTED as follows:

(1)     Because Plaintiff Mulvaney voluntarily agrees that she does not have standing to proceed with both her Count II claim under the Trade Practices and Frauds Act and her Count V claim of breach of contract, those claims are dismissed without prejudice;

(2)     Plaintiff Mulvaney failed to state a valid claim with respect to her Count I claim under the Unfair Trade Practices Act, and Plaintiff Mulvaney's Count I claim is dismissed with prejudice;

(3)     Plaintiff Mulvaney lacks standing to proceed with her Count III claim for Uninsured Motorist Benefits and, alternatively, Plaintiff Mulvaney failed to state a valid claim for violations of the Uninsured Motorist Benefits statute, and Plaintiff Mulvaney's Count III claim is dismissed;

(4)     Plaintiff Mulvaney lacks standing to proceed with her Count IV claim for breach of the Implied Covenant of Good Faith and Fair Dealing, and alternatively, Plaintiff Mulvaney failed to state a valid claim for breach of the Implied Covenant of Good Faith and Fair Dealing, and Plaintiff Mulvaney's Count IV claim is dismissed;

(5)     Plaintiff Mulvaney failed to state a valid claim with respect to her Count VI claim for Injunctive Relief, and Plaintiff Mulvaney's Count VI claim is dismissed with prejudice;

(6)     Plaintiff Mulvaney's Count VII claim for Declaratory Judgment is not ripe, and

Plaintiff Mulvaney's Count VII claim is dismissed without prejudice; and

(7)     Plaintiff Mulvaney's Count VIII claim for Punitive Damages is dismissed.


_____
SENIOR UNITED STATES DISTRICT JUDGE