IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Civil Action No. 6:10-cv-00751-JAP-SMV

JASON CASADOS, for himself and for all others similarly situated,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

    Defendant.

**DEFENDANT'S RESPONSE IN OPPOSITION TO OBJECTION TO FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT BY MARK AND AMANDA PIERCE AND JEFFREY BROWN**

Defendant Safeco Insurance Company of America, by and through its undersigned counsel, Lewis Roca Rothgerber LLP, hereby submits its Response to Objections filed by Mark and Amanda Pierce and Jeffrey Brown (collectively, the "Objectors") to Final Approval of the Casados Class Settlement Agreement [ECF No. 84] and, in support thereof, states as follows:

### I. INTRODUCTION

After protracted, arms-length negotiations, Plaintiff Jason Casados, on behalf of himself and those similarly situated ("Plaintiff"), and Defendant Safeco Insurance Company of America ("Safeco") agreed upon a comprehensive class settlement that resolves all claims asserted in this litigation. This settlement is a compromise of disputed allegations regarding the scope of uninsured and underinsured motorist ("UM/UIM") coverage afforded under certain automobile insurance policies issued by Safeco in New Mexico between May 20, 2004 and November 1, 2014 (the "Class Period"). The detailed terms of the proposed class settlement are reflected in

the parties' executed Settlement Agreement, which was entered into, in part, as a result of the New Mexico Supreme Court's decisions in *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214 and *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209.

On June 5, 2015, Plaintiff, on behalf of himself and for others similarly situated, filed his Unopposed Motion and Memorandum for Preliminary Approval of the class settlement, which attached as Exhibit 1 the parties' executed Settlement Agreement [ECF No. 76, 76-1]. On June 9, 2015, this Court granted its preliminary approval for the class settlement pursuant to the terms and conditions set forth in the Settlement Agreement. *See* Order Preliminarily Approving Settlement, Approving Notice to Settlement Class Members, and Setting Date for Final Approval Hearing ("Preliminary Approval Order") [ECF No. 78]. The Final Approval Hearing for the class settlement is scheduled to be held on October 8, 2015 at 10:00 a.m. *See* Order [ECF No. 86].

Under the terms of the Preliminary Approval Order, notice of the proposed class settlement was provided to all Settlement Class Members, including Subclass A and Subclass B Members. Further, all Settlement Class Members were permitted to opt-out of the proposed class settlement by returning a written, signed request for exclusion to the Settlement Administrator postmarked no later than September 24, 2015, which is fourteen (14) days prior to the Final Approval Hearing. *See* Preliminary Approval Order, p. 8, ¶ 15; Class Notice [ECF No. 76-1, p. 86 of 98] at p. 12, ¶ 27, attached as Exhibit D to the Settlement Agreement. The opt-out right specifically extended to any and all Subclass A Members who might wish to exclude themselves from the settlement and reserve their putative claims under the New Mexico

2

Unfair Practices Act ("UPA"), NMSA 1978, § 57-12-1 to -22 (1967, as amended).  As the Court ordered: "Subclass A Members who do not also qualify as Subclass B Members will be permitted to exclude themselves (i.e., opt-out) from this Settlement including, but not limited to, all claims they may have under the New Mexico Unfair Practices Act, NMSA 1978 § 57-12-10(B)."  *See* Preliminary Approval Order, p. 2, ¶ 3.

Any and all objections to the Settlement Agreement were due to be filed no later than September 24, 2015.  *See* Preliminary Approval Order, p. 9, ¶ 18.  On September 22, 2015, the Objectors, through their attorney, David Berardinelli, Esq., filed their Objection to the Final Approval of the Settlement Agreement ("Objection") [ECF No. 84].  The Objection includes separate and distinct grounds for objection asserted by Objectors Mark and Amanda Pierce (the "Pierces"), as insureds of Safeco, and Liberty Mutual Objector Jeffrey Brown ("Brown") who is not an insured under any policy issued by Safeco during the Class Period.  As explained below, the Objectors' arguments are without merit and should be denied by this Court.

## II. LEGAL STANDARDS

This Court has broad discretion to approve class action settlements over the objections of a class member.  *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  "It is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies."  *In re Thornburg Mortgage, Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1227 (D.N.M. 2012) (quoting *Grady v. De Ville Motor Hotel, Inc.,* 415 F.2d 449, 451 (10th Cir. 1969)). Objections should not impede a class action settlement if it is "fair, reasonable, and adequate."  F.R.C.P. 23(e)(2).

In making this assessment, the Court should analyze: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The Court should reject an objector's invitation to conduct a "foray into the wilderness in search of evidence that might undermine the conclusion that the settlement is fair" but, rather, should independently analyze the proposed class settlement. *In re Thornburg Mortgage, Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1228 (D.N.M. 2012) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993)).

### III.  ARGUMENT

A.  **The Pierces' Objection Should Be Denied.**

The Pierces' Objection is premised upon a misreading of the plain language of the UPA. As the Pierces concede, if the UPA does not allow absent class members to recover statutory damages without the need to prove actual damages, their Objection is moot and the class settlement should be approved. *See* Objection at 17.  As explained below, this Court should deny the Pierces' Objection because (1) the plain language of the UPA demonstrates that absent class members may not recover statutory damages; (2) there are no grounds to certify this question of law to the New Mexico Supreme Court; and (3) this Court otherwise has jurisdiction to approve this class settlement because it resolves an actual case or controversy between the parties.

### 1. The UPA Does Not Permit the Recovery of Statutory Damages by Absent Class Members.

The Pierces' Objection is based upon the faulty premise that they, as Subclass A Members, could assert a future class action on behalf of all Subclass A Members, each of which would be entitled to recover fixed statutory damages for alleged violations of the UPA. *See* Objection 10-15. The Pierces then criticize the proposed class settlement for failing to adequately compensate Subclass A Members for the release of those purported class claims. *See id*.

To the contrary, the Subclass A Members do not possess *any* class claims for statutory damages as a result of any alleged violations of the UPA. The UPA provides that any "person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater." NMSA 1978, § 57-12-10(B). However, the UPA explicitly limits class members' recovery to actual damages:

> In any class action filed under this section, the court may award damages to *the named plaintiffs* as provided in Subsection B of this section and may award *members of the class* such *actual damages* as were suffered by each member of the class as a result of the unlawful method, act or practice.

§ 57-12-10(E) (emphasis added).

The New Mexico Court of Appeals recognized the prohibition on class-wide damages in its alternative holding in *Brooks v. Norwest Corp.*, 2004-NMCA-134 ¶¶ 37, 44-45, 136 N.M. 599, 611, 103 P.3d 39, 51 and stated:

5

> Individuals who sue under the [UPA], as opposed to members who sue as a class, are entitled to collect more than their actual damage. § 57–12–10(E) (limiting the recovery of statutory and treble damages in class action to named plaintiffs). Conversely, *any relief realized by class members is limited to actual damages; they are barred from collecting statutory or treble damages. Id.* Hence, the UPA not only provides a remedy for Plaintiffs, it also appears to be less fair to those members to pursue their remedy as a class action.

*Id*. ¶ 45 (emphasis added).

Other courts have reached the same conclusion. *See Porcell v. Lincoln Wood Products, Inc.*, 713 F. Supp. 2d 1305, 1320 (D.N.M. 2010) ("[i]n a class action, class members are limited to recovery of 'actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice'"); *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 621 n.4 (D.N.M. 2007) ("While named plaintiffs may be awarded statutory damages upon proof of a violation and can also recover treble damages, members of a class are limited to the recovery of actual damages"); *In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 28 (D. Mass. 2004) ("not surprisingly" statutory damages under UPA "are unavailable in class actions").

Thus, as the Pierces concede (Objection at 17), the fact that New Mexico law does not allow absent class members asserting violations of the UPA to recover statutory damages without the need to prove actual damages renders their Objection moot. Thus, the Court should deny the Pierces' Objection.

> **2.  The Pierces' Request to Certify a Question of State Law to the New Mexico Supreme Court Should Be Denied.**

Because New Mexico law is clear that statutory damages are not available to absent class members under the UPA, the Pierces' request to certify that question to the New Mexico Supreme Court should be denied. *See* Objection at 15-18.

> a. **The Court Has the Duty to Decide Questions of State Law and Should Only Certify Unsettled, Novel, and Determinative Questions Under Limited Circumstances.**

In a diversity action, federal courts must apply the law of the forum state. *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (citation omitted). "If the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue." *Id*. "The federal court should consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Id*.

The Court should "apply judgment and restraint before certifying" a question of state law to the state supreme court, but may invoke this procedure where the question is (1) determinative of the case at hand and (2) sufficiently novel that the Court feels "uncomfortable attempting to decide it without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (citations omitted); *see also Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990) (affirming district court's denial of request to certify questions of state insurance law that were neither unsettled nor novel).

The New Mexico Supreme Court will only consider answering a question of law certified by this Court "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state." *See* NMSA § 39-7-4. The New Mexico Supreme Court considers the "degree of uncertainty in the law and prospects for judicial economy in the termination of litigation" in deciding whether or not to accept certification from a federal court. *Schlieter v. Carlos*, 775 P.2d 709, 713 (N.M. 1989). "[I]n all certifications the issue should present a significant question of

law under the New Mexico Constitution or be one of such substantial public interest that it should be determined by [the New Mexico Supreme] Court." *Id.*

The decision to certify a question of state law is within the sound discretion of the federal district court. *Bonham v. Indem. Ins. Co. of N. Am.*, 507 F. Supp. 2d 1196, 1207 (D.N.M. 2007). However, under the diversity statutes, "state rights must yield to the right of diverse defendants under the removal statutes" and federal courts must decide questions of state law, even if the issues are difficult or uncertain. *See Copier v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (citing *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943) (explaining "duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment"). Thus, "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo*, 843 F.2d at 407; *see also Pino*, 507 F.3d at 1236 (federal courts will not "trouble our sister state courts every time an arguably unsettled question of state law" arises). If the district court sees a "reasonably clear and principled course" it should follow it itself without input from the state supreme court. *Armijo*, 843 F.2d at 407.

      **b.**    **Certification Should Be Denied Because the Answer to the Question Posed is Well-Settled under Existing Law.**

The Pierces' request to certify a question to the New Mexico Supreme Court should be denied. The question the Pierces seek to certify is resolved by the plain language of the UPA and New Mexico case law interpreting the same. There is no valid basis to request that the New Mexico Supreme Court confirm whether "absent class members [may] recover statutory damages without the need to prove actual damages" (Objection at 18) when the statute

8

unambiguously distinguishes between named plaintiffs and absent class members, and provides that "the court may award . . . members of the class such actual damages as were suffered."

The New Mexico Court of Appeals' holding in *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, 142 N.M. 437, 166 P.3d 1091 does not justify certification. *See* Objection at 16-17. The *Lohman* court did not address § 57-12-10(E) or the relief the UPA affords unnamed class members. Rather, the issue in *Lohman* was whether the *named plaintiff* in a class action could seek statutory damages *for himself*. *Lohman*, 2007-NMCA-100, ¶ 43. The *Lohman* court never addressed whether each unnamed class member, in the absence of any actual damage, could seek a statutory damage award for himself or herself.[1] Therefore, this Court should deny the request to certify a question of ordinary statutory interpretation to the New Mexico Supreme Court.

3. **The Pierces Had the Opportunity to Preserve Their Individual UPA Claims By Opting Out.**

Although the UPA does not permit absent class members to recover statutory damages, the Pierces were free to preserve their own individual claims under the UPA by opting out and excluding themselves from this settlement. "[C]lass members may either object or opt out, but they cannot do both." Newberg on Class Actions § 13:23 (5th ed.). "Once an individual opts out of a class action, she is excluded entirely from the suit." *Id*. "If an individual opts out, she is

---

[1] In dicta at the end of the opinion, the *Lohman* court stated that: "[e]ven if Plaintiff fails ultimately to prove that he and his putative class members have suffered economic losses [i.e., actual damages], they may nevertheless seek the statutory $100 minimum." *Lohman*, 2007-NMCA-100, ¶ 47. This sentence does not carry the significance the Pierces suggest. *See* Objection at 16. The *Lohman* court simply stated, consistent with the express language in the UPA, that in the absence of actual damages, all the named plaintiff and putative class could recover, in total, was the $100 statutory minimum for the named plaintiff or, at most, that each individual would retain their individual claim for $100—but not $100 per absent class member.

9

free to pursue her own litigation or not to pursue her own litigation as she sees fit." *Id*. However, "[c]lass members who do not opt out by the deadline are bound by the litigation." *Id*. Moreover, the ability to opt out is generally an individual right, meaning that an individual may not opt out a group *en masse* without the express consent of each individual. *Id*.

Here, all Settlement Class Members—including Subclass A Members—were notified of their right to opt-out of the proposed class settlement to specifically preserve any claims they may have under the UPA. As the Court ordered: "Subclass A Members who do not also qualify as Subclass B Members will be permitted to exclude themselves (i.e., opt-out) from this Settlement including, but not limited to, all claims they may have under the New Mexico Unfair Practices Act, NMSA 1978 § 57-12-10(B)." *See* Preliminary Approval Order, p. 2, ¶ 3. To request exclusion, the Settlement Class Member was required to return a written, signed request for exclusion to the Settlement Administrator postmarked no later than September 24, 2015. *See* Preliminary Approval Order, p. 8, ¶ 15; Class Notice [ECF No. 76-1, p. 86 of 98] at p. 12, ¶ 27, attached as Exhibit D to the Settlement Agreement.

Had the Pierces been concerned with maintaining their right to assert a claim, individually, for any alleged violations of the UPA, they could have easily excluded themselves from this class settlement and preserved those claims. The Pierces elected not to do so. Rather, they chose to object based upon an unsupported interpretation of the UPA. The Pierces' ill-advised course of action does not impact the overall fairness, reasonableness, and adequacy of the proposed class settlement to Subclass A Members. Thus, the Court should deny the Pierces' Objection.

### 4. The Court Has Subject Matter Jurisdiction Over This Case and Settlement.

The Pierces mistakenly assert that this Court lacks subject matter jurisdiction to approve the proposed class settlement because it includes Subclass A Members (who received notice of reformed limits under their Safeco policies) who are not also Subclass B Members (who experienced an accident that would give rise to a UM/UIM claim against that reformed coverage). *See* Objection 18-24. As noted above, the thrust of the Pierces' jurisdictional argument is premised upon their inflated assessment of the UPA claims released by Subclass A Members that do not exercise their right to opt out. Because no class claims for statutory damages exist under the UPA, none are being released—each Subclass A Member is releasing an individual UPA claim for his or her actual damages or $100 statutory damage, whichever is greater.

Further, the Pierces' Objection ignores that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"). Safeco removed this case to federal district court on August 12, 2010 pursuant to CAFA jurisdiction [ECF No. 1], which has never been contested. Pursuant to this Court's CAFA jurisdiction, this Court also maintains supplemental jurisdiction over all related claims that are part of the same case or controversy, even if they involve additional parties. 28 U.S.C. § 1367(a).

In addition, the Pierces conflate the Court's need for subject matter jurisdiction over the controversy as a whole and *each term* of a settlement agreement. It is true that federal courts have jurisdiction over only "cases and controversies," *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990), and that it is the responsibility of the plaintiff to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," *Renne v. Geary*, 501 U.S. 312, 316

11

(1991) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 (1986)).  There is no dispute here that an actual case or controversy exists between Plaintiff, individually and on behalf of the class, and Safeco, per the allegations in the operative complaint and answer, which conferred subject matter jurisdiction upon this Court.  Safeco contested many of Plaintiff's allegations, denied all wrongdoing, and asserted various defenses to Plaintiff's claims.  The Pierces do not cite any authority that would support divesting the Court of subject matter jurisdiction based upon one provision in a settlement agreement that resolves an actual case or controversy as a whole.

Indeed, it is "routine for courts to approve settlements with broad releases of claims arising out of the facts and circumstances that were or could have been asserted in the case." *Epstein v. Wittig*, No. 03-4081-JAR, 2005 WL 3276390, at *4 (D. Kan. Dec. 2, 2005).  In particular, "[c]lass action releases may include claims not presented and even those which could not have been presented" provided the released conduct arises from the same factual predicate. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 107 (2d Cir. 2005).[2]

---

[2] *See also Blunt v. Lower Merion Sch. Dist*., 767 F.3d 247, 282 (3d. Cir. 2014) ("settlement agreement may release all claims arising out of the transaction with which the release was concerned even if they are not yet known; and broad releases are valid at least when negotiated between sophisticated parties") (citation omitted); *Grimes v. Vitalink Comm. Corp.*, 17 F.3d 1553, 1562-63 (3rd Cir. 1994) ("it is widely recognized that courts without jurisdiction to hear certain claims have the power to release those claims as part of a judgment"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–88 (9th Cir.), *cert. denied*, 506 U.S. 953, (1992) (court may release not only claims alleged in the complaint, but all claims arising from the same nucleus of operative facts over which the court would not have jurisdictional competency); *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 33-34 (1st Cir. 1991) ("a federal court can approve a settlement releasing state claims not before it") (citation omitted); *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 221 (5th Cir. 1981) (same).

In *Epstein*, the court considered a challenge to the subject matter jurisdiction of the court over claims against persons not named as parties in the litigation that were being settled. 2005 WL 3276390, at *4. The court explained that litigants in class actions "may release both the named defendants as well as unnamed parties with respect to asserted or unasserted claims arising out of the same underlying facts." *Id*. Thus, the court concluded it had subject matter jurisdiction to enter the order approving the release. *Id*.

It is axiomatic that a defendant settling a class action would only do so if it could secure absolute finality as to all potential claims arising from the same alleged facts and legal issues. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985) ("Whether it wins or loses on the merits, [the defendant] has a distinct and personal interest in seeing the entire plaintiff class bound by *res judicata* just as petitioner is bound."). To achieve the finality that the class settlement requires, the proposed settlement is intended to extinguish all Released Claims held by putative Settlement Class Members against Safeco and all Releasees. *See* Settlement Agreement, p. 37. The scope of the release by Settlement Class Members will include, but is not limited to, the release of any past, present or future "agents," "brokers" or "producers." These individuals and entities are included in the definition of "Releasees" in the Settlement Agreement, as well as the definition of "Released Parties" in the Class Notice. *See* Settlement Agreement, p. 8, ¶ 28; Class Notice, p. 17 of Ex. D to the Settlement Agreement [ECF No. 76-1, p. 91 of 98].

For these reasons, the Pierces' jurisdictional challenge to the proposed class settlement is without merit.

2005574269_1

### B. Jeffrey Brown's Objection Should Be Denied.

#### 1. Brown is Not a Member of the Class and Lacks Standing to Object.

Brown's Objection must be denied for lack of standing. Only a class member has the right to object to a proposed class settlement. F.R.C.P. 23(e)(5). To the contrary, non-class members generally lack standing to object to the proposed settlement or notice thereof. *See* Newberg on Class Actions § 13:22 (5th ed.). Here, the Settlement Class Members are persons insured under certain personal automobile policies issued by Safeco only—no other insurer. *See* Settlement Agreement [ECF No. 76-1], at pp. 9-11, ¶ 34. In contrast, Brown alleges that he was insured by Liberty Mutual during the Class Period, not Safeco. *See* Objection at 7; Brown's Declaration, attached as Exhibit 12 to the Objection [ECF. No. 84-12]. The documents submitted by Brown indicate that he was insured by a separate and distinct underwriting insurance carrier, Liberty Mutual Fire Insurance Company. *Id.* at pp. 3-5 (lower left corner). There is not a single reference to "Liberty Mutual Fire Insurance Company" anywhere in the Settlement Agreement, the Class Notice, or any of the exhibits submitted in support of the proposed class settlement. Because Brown is not a Safeco insured, he is not a class member, and he lacks standing to object. The Court should deny his Objection on this basis.

#### 2. Brown's Objection is Otherwise Without Merit.

For the same reason Brown lacks standing to complain about this class settlement, the substance of his Objection lacks merit as well—this settlement does not address Brown, any policies issued by Liberty Mutual Fire Insurance Company, or release Brown's alleged UPA claims against Liberty Mutual agents. Brown's Objection is based upon his misinterpretation of

the scope of the proposed class settlement and mistaken assumption that his insurance company, Liberty Mutual Fire Insurance Company, is being released under the Settlement Agreement.

To the contrary, the parties to the proposed class settlement are Plaintiff and Safeco, and the only insurance policies encompassed by the class settlement are those issued by Safeco during the Class Period. The terms of the proposed settlement do not purport to release any claims against any other insurance companies that may have issued insurance policies in New Mexico during the Class Period. Since Brown was not insured by Safeco during the Class Period and his insurance company is not being released under the terms of the proposed class settlement, his Objection should be summarily rejected by this Court.

The only issuing carrier that is encompassed by the parties' proposed class settlement is Safeco. The Settlement Agreement defines "Safeco" as "Safeco Insurance Company of America." *See* Settlement Agreement, p. 9, ¶ 30. Moreover, the "Policies" embraced by the parties' settlement include only "the personal automobile insurance policy or policies issued **by Safeco** in New Mexico to a Settlement Class Member and effective during the Class Period." *See* Settlement Agreement, p. 7, ¶ 22 (emphasis added). The "Settlement Class Members" include only those individuals who were insured "**under a Safeco Policy** issued or renewed in New Mexico" during the Class Period. *Id.* at p. 9, ¶ 34 (emphasis added).

The Class Notice mailed to Class Members clearly identified Safeco as the sole issuing insurance carrier. *See* Class Notice, Ex. D to the Settlement Agreement. The very first page of the Class Notice advised all recipients: **NOTICE OF CLASS ACTION SETTLEMENT INVOLVING: UNINSURED AND UNDERINSURED MOTORIST ("UM/UIM") COVERAGE ON NEW MEXICO AUTOMOBILE INSURANCE POLICIES ISSUED BY,**

15

**RENEWED BY, OR IN EFFECT <u>WITH SAFECO INSURANCE COMPANY OF AMERICA ("SAFECO") BETWEEN MAY 20, 2004 AND NOVEMBER 1, 2014.</u>**  *Id.* (emphasis in original).  Throughout the Class Notice there are repeated references to Safeco that confirm the proposed class settlement encompasses only this underwriting insurer.

Brown focuses excessively on a perceived immaterial difference between two defined terms in the Settlement Agreement and the Class Notice.  The Settlement Agreement defines "Releasees" to mean (i) Safeco; (ii) any past, present or future officers, directors, employees, agents, attorneys, brokers, representatives, regional directors, field marketing directors, producers, or shareholders of Safeco; and (iii) any successors, assigns, or persons acting on behalf of any of the foregoing."  *See* Settlement Agreement, p. 8, ¶ 28.  The term "Releasees" is not defined in the Class Notice, which instead includes a definition of "Released Parties."  *See* Class Notice, p. 17 of Ex. D to the Settlement Agreement.  [ECF No. 76-1, p. 91 of 98].  The list of "Released Parties" includes a reference to "corporate parents," which does not appear in the definition of "Releasees" in the Settlement Agreement.

Brown overlooks that the Settlement Agreement establishes the operative and enforceable terms of the parties' settlement.  Indeed, the Class Notice plainly advises that: "In the event of any inconsistencies between the language in this Notice and the terms of the Settlement Agreement, the Settlement Agreement controls."  *Id.* at p. 3, ECF No. 76-1, p. 77 of 98.  Accordingly, to the extent any perceived discrepancies exist, the Release in the Settlement Agreement controls.

Seizing upon the reference to "corporate parents" in the Class Notice, Brown mistakenly argues that his putative claims against his insurance company, "Liberty Mutual," are being

16

released as part of the parties' class settlement. This reflects a misunderstanding of the scope of the proposed class settlement and the identity of his own insurer. First, Brown's purported insurance company, Liberty Mutual Fire Insurance Company, is not encompassed within the terms of the proposed class settlement and is not a Releasee under the Settlement Agreement. *See* Settlement Agreement, p. 8, ¶ 28; p. 37, XII Final Dismissal and Releases. In fact, there is not a single reference to Liberty Mutual Fire Insurance Company in the Settlement Agreement.

Second, Brown has not and cannot establish that Liberty Mutual Fire Insurance Company is Safeco's "corporate parent" within the meaning of the Class Notice. In fact, Liberty Mutual Fire Insurance Company is a separate and distinct underwriting company, and is not the "corporate parent" of Safeco. In any event, however, the issue is a red herring since the terms of the Settlement Agreement control, and "Releasees" under the Settlement Agreement do not include Safeco's "corporate parent."

Since Brown's entire argument is founded on a misinterpretation of the proposed class settlement, this Court should summarily deny his Objection. Contrary to his expressed concern, Brown's insurance company, Liberty Mutual Fire Insurance Company, is not encompassed within the scope of the Releasees under the Settlement Agreement. Accordingly, the Objection filed by Brown should be denied.

## C.     The Objectors' Request to Present Live Testimony Should Be Denied.

At the conclusion of their Objection, Objectors state that they will appear through counsel at the final fairness hearing set for October 8, 2015, and that no witnesses will be called to testify. *See* Objection at 24. Yet, the day after the Objection was filed, counsel for the Objectors

represented to the Court that he intended to call the Objectors as witnesses to provide live testimony at the hearing.

The Objectors' request to present live testimony at the hearing should be denied. While objectors to a class settlement should be afforded procedural due process, that does not require allowing objectors to dictate the manner in which they will be heard. *Rutter,* 314 F.3d at 1187 (holding objectors were afforded adequate due process where district court denied request to present live testimony, file rebuttal affidavits, and cross-examine fairness expert); *Jones*, 741 F.2d at 325 ("Although the right to be heard is an integral part of due process, an individual entitled to such process is not entitled to dictate to the court the precise manner in which he is to be heard."). The Court may, in its discretion, limit the presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement. *See Epstein,* 2005 WL 3276390, at *7. Thus, the Tenth Circuit has held that where an objector submits a memorandum to the court detailing his objection, he is afforded "the full panoply of procedural due process." *Jones*, 741 F.2d at 325 (affirming trial court's denial of full evidentiary hearing).

Here, the Objectors have filed a detailed objection raising legal arguments, which was supported by declarations from the Pierces and Brown. The Objectors conceded in the Objection that witnesses would not be called at the hearing, and have demonstrated no necessity for doing so. In fact, as the arguments in the Objection and this Response reveal, any testimony from the Objectors is irrelevant to the fairness, reasonableness, and adequacy of this class settlement. Therefore, the Court should deny the Objectors' request to testify at the final approval hearing on October 8, 2015.

## IV. CONCLUSION

For the foregoing reasons, Defendant Safeco Insurance Company of America respectfully requests that this Court deny the Objection to the Final Approval of the Casados Class Settlement Agreement filed by Objectors Mark and Amanda Pierce, and Liberty Mutual Objector Jeffrey Brown.  There are practical reasons why this proposed class settlement includes Subclass A and B.  Subclass A Members receive notification of their reformed insurance limits, in part, to capture the Subclass B Members that may have a claim for monetary relief.  A class settlement that consisted of only Subclass B Members without addressing the Subclass A Members could be subject to collateral attack as incomplete and inadequate because an individual cannot make an informed decision about presenting a claim without first knowing their applicable levels of coverage.  The Objectors do not present any valid grounds to deny final approval of the proposed class settlement.

Respectfully submitted this 28th day of September, 2015.

*s/ Jessica L. Fuller*
Brian J. Spano, Esq.
Jessica L. Fuller, Esq.
LEWIS ROCA ROTHGERBER LLP
One Tabor Center, Suite 3000
1200 Seventeenth St.
Denver, CO 80202
(303) 623-9000
E-mail: bspano@lrrlaw.com
         jfuller@lrrlaw.com

Seth L. Sparks, Esq.
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
P.O. Box. 1888
Albuquerque, NM 87103
(505) 765-5900

*Attorneys for Defendant Safeco Insurance Company of America*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September, 2015, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, causing a copy of the same to be delivered to all counsel of record in the above-captioned matter.

*s/ Jessica L. Fuller*
Jessica L. Fuller