IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JASON CASADOS on behalf of himself
and for others similarly situated,

Plaintiff,

v.                                                              No. 6:10-CV-00751 JAP/SMV

SAFECO INSURANCE COMPANY
OF AMERICA,

Defendant.

**PLAINTIFF'S RESPONSE TO OBJECTORS MARK AND AMANDA PIERCE AND**
**OBJECTOR JEFFREY BROWN**

Mark and Amanda Pierce are Class Members of the Settlement reached in this case, which

is between Safeco Ins. Co. of Am. and Plaintiff Jason Casados, and Jeffrey Brown, who is a Liberty

Mutual policyholder, is not a member of the Settlement before the Court in this matter because

Liberty Mutual is neither a party to the Settlement Agreement nor a party that will be released as

a result of this Settlement.[1]   The objection filed by the Pierces and Mr. Brown is the only objection

in this case, Doc. 84, and all objectors are represented by the same counsel, David Berardinelli.

The objections in this case are grounded in, and predicated upon, the same argument Mr.

Berardinelli (on behalf of an objector) made in a similar class action settlement that was recently

approved by the Honorable Robert C. Brack, in which Mr. Berardinelli's objections were

dismissed. *See Stanforth v. Farmers Ins. Co. of Ariz.*, No.  1:09-CV-01146 RB/RHS (D.N.M.).[2]

---

[1] Mr. Brown's counsel argues Liberty Mutual is being released as part of this Settlement [Doc. 84], but as explained in Section A below, Liberty Mutual is neither a party to this Settlement nor being released as part of this Settlement.

[2] Plaintiff's counsel in this case represent the plaintiffs in *Stanforth*.  Mr. Berardinelli has appealed the approval of the settlement and dismissal of his objections to the Tenth Circuit.  10th Cir. Case No. 14-2131.

First, because Mr. Brown has a policy of insurance with Liberty Mutual, not Safeco, he is not a member of the *Casados* Class and has no standing to object.  *See Heller v. Quovadx, Inc.*, 245 Fed.Appx. 839, 842 (10th Cir. 2007) (affirming "'non-class members have no standing to object'" to a class action settlement) (quoting *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir.1989)).  Liberty Mutual is neither party to the Settlement Agreement [Doc. 76-1] nor a party released as a result of this Settlement, therefore Mr. Brown is not a member of the *Casados* Class and has no standing to object.  Second, Mr. Berardinelli, on behalf of the Pierces, argues (1) that this Court has no federal subject matter jurisdiction under Article III to permit reformation of all Safeco Policies to equalize the Uninsured and Underinsured Motorist ("UM/UIM") coverage of all Safeco Policies, for the Class Period of May 20, 2004 to November 1, 2014, up to the liability limits in every policy, (2) that Plaintiff Jason Casados does not have standing, as Class Representative, to equalize the UM/UIM coverage up to the liability limits of coverage for people who are only members of Subclass A, and (3) there is no case or controversy because, according to Mr. Berardinelli, declaratory relief cannot be granted to equalize UM/UIM coverage because the claim is not ripe.  Doc. 84 at 2.

There are two Subclasses under the terms of this Settlement (Subclass A and Subclass B). Doc. 76-1, at 5, ¶ 1 (Settlement Agreement).  Subclass A Members are Safeco policyholders and insureds whose Policies did not provide equalized UM/UIM coverage during the Class Period. Subclass B Members are Subclass A Members and other insureds who were involved in an accident that had either bodily injury or property damage claims, and who were insured under Safeco Policies which did not provide equalized UM/UIM coverage during the Class Period.  Doc. 78, at 2, ¶ 3.  The Pierces, who are members of Subclass A but not Subclass B in this matter, maintain this Court has no jurisdiction to grant declaratory judgment on grounds this Settlement

is extinguishing Subclass A Members' ***class*** claims under the New Mexico Unfair Trade Practices Act ("NMUPA"), NMSA 1978, §§ 57-12-1 to -22 (1967, as amended).  But as explained in detail below, because only a class representative (in an action brought as a class action) can seek to recover the statutory-damage remedy provided under the NMUPA, and members of a class may only recover "actual damages," members of this Settlement who are only Subclass A Members have no statutory "class" claims that can be extinguished in this Settlement.

The Pierces admit that if the NMUPA "does *not* allow absent class members to recover statutory damages, without the need to prove actual damages, then this objection is essentially moot—and this Class Settlement should be approved."  Doc. 84 at 17.  Because the plain language of the NMUPA is clear that members of a class action may not recover the statutory-damages remedy under the Act, NMSA 1978, § 57-12-10(E), and this Settlement protects Subclass A Members by providing notice that advises the Class, including the Pierces, that Subclass A Members (who are not members of Subclass B) are entitled to opt-out of the Settlement and pursue their NMUPA statutory damages claim, this Settlement should be approved and the objections dismissed.

**A. Mr. Jeffrey Brown, who is a Liberty Mutual policyholder, does not have standing to object because he is not a member of the Settlement before the Court and no claims are being released that pertain to Liberty Mutual.**

An objector must have standing to object to a class-action settlement.  *Heller*, 245 Fed.Appx. at 842; *see* 4 William B. Rubenstein, *Newberg on Class Actions* § 13:22, at 354 (2014) ("As Rule 23 confers the right to object upon class members, the Rule itself does not confer standing upon nonclass members.").  Mr. Brown, "as the party seeking to establish jurisdiction [to object to a class-action settlement], bears the burden of proving standing."  *Feder v. Electronic Data Sys. Corp.*, 248 Fed.Appx. 579, 581 (5th Cir. 2007) (per curiam) (citing *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1992)); *see New Eng. Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008) (same).

As Safeco will confirm in this case, Liberty Mutual is neither a party to the Settlement before the Court nor is it being released as part of this Settlement.  Mr. Brown complains that because Liberty Mutual is the "parent company" of Safeco and the Notice in this case states there is a release of "parent companies," the parties are somehow "playing fast and loose" with the Court and "taking advantage of the lack of knowledge and sophistication" of Safeco and Liberty Mutual policyholders.  Doc. 84 at 3-4.  Mr. Brown, however, is wrong.  The Parties in this matter do not (and did not) intend to add Liberty Mutual as a party nor release Liberty Mutual as part of this Settlement.  There is no "taking advantage of the lack of knowledge and sophistication" of any insureds as neither the Settlement Agreement nor any of the Notice documents, website, telephone hotline, or any other document includes or so much as mentions "Liberty Mutual."   As to any inconsistencies between the Settlement Agreement and Notice, which were inadvertent to the extent they exist, the Notice in this case explicitly states:  "In the event of any inconsistencies between the language in this Notice and the terms of the Settlement Agreement, the Settlement Agreement controls."  Doc. 84-2 (*Casados* Notice).[3]

The Settlement Agreement neither implies nor reflects that Liberty Mutual is being released or is a party to this Settlement.  The parties being released as a result of this Settlement, called "Releasees," are defined as follows in the Agreement:  "The 'Releasees' shall mean (i) Safeco; (ii) any past, present or future officers, directors, employees, agents, attorneys, brokers,

---

[3] *See also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 282 (3d Cir. 2014) (citing cases holding that the settlement agreement itself is best evidence of intent of the parties); *Farmer Oil & Gas Properties, LLC v. S. Ute Indian Tribe*, 899 F. Supp. 2d 1097, 1104 (D. Colo. 2012) (same).

representatives, regional directors, field marketing directors, producers, or shareholders of Safeco; and (iii) any successors, assigns, or persons acting on behalf of any of the foregoing."  Doc. 76-1 at 9, ¶ 28 (Settlement Agreement).  Because nothing in the Settlement Agreement indicates or implies Liberty Mutual is included or being released as part of this Settlement, as Safeco will agree, and not a single document related to the Settlement in this case nor the Notice provided to insureds mentions the name "Liberty Mutual," no insured (of either Safeco or Liberty Mutual) will be led to believe Liberty Mutual claims are being extinguished as part of this Settlement.

Because Liberty Mutual is not being released as part of this Settlement, and Mr. Brown is a policyholder of Liberty Mutual, not Safeco, Mr. Brown has no standing to object to this Settlement and his objection should be dismissed.

**B. Neither the Pierces nor any other member of the *Casados* Class has a "class claim" to collect nominal statutory damages under the NMUPA because the Act only permits members of a class to collect "actual damages," and prohibits members of a class from recovering the statutory-damages remedy allowed for individuals under the Act.**

The Pierces maintain their "class" claims under the NMUPA are being extinguished, yet this argument ignores that no class can exist, as a matter of law, for NMUPA claims seeking only nominal statutory damages under the Act.   As part of this Settlement, all Safeco Policies, as defined in the Settlement Agreement, from May 20, 2004 to November 1, 2014 (the Class Period), will be reformed to provide equalized UM/UIM coverage.  Subclass A Members, who are not also Subclass B Members, will receive equalized UM/UIM coverage and are also permitted under the Settlement Agreement in this case to opt-out of this Settlement and pursue their statutory damages claim, if established, under the New Mexico Unfair Practices Act ("NMUPA"), NMSA 1978, § 57-12-10(B), which is the only remedy available under the NMUPA for Class Members who do not have bodily injury or property damage claims.  Recognizing that class members who have suffered no actual damages cannot recover statutory nominal damages under the NMUPA through

the vehicle of a class action, this Settlement permits Subclass A Members who do not also qualify as Subclass B Members to exclude themselves (i.e., "opt-out") from this Settlement, which permits the Subclass A Member to pursue any claim to the statutory damages available to individual persons under the NMUPA.  § 57-12-10(B).[4]

For violations of the NMUPA, a person is entitled to "actual damages or the sum of one hundred dollars ($100), whichever is greater."  § 57-12-10(B).  But under the NMUPA, only the named plaintiff (i.e., a class representative) of a class action may recover statutory damages as permitted under Section 57-12-10(B).  § 57-12-10(E).  While members of a class action may recover "actual damages," class members are explicitly barred under the NMUPA from recovering the statutory damages described in Section 57-12-10(B), as explained in Section 57-12-10(E).  Section 57-12-10(E) states:  "In any class action filed under this section, the court may award damages to the named plaintiffs as provided in Subsection B of this section and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice."

The Pierces, who did not have a loss or damages caused by an uninsured/underinsured motorist by their own account, are entitled to opt-out of the Settlement and pursue their individual claim for statutory damages.  The Pierces have been provided notice that this Settlement provides them with equal limits UM/UIM coverage, and they were advised of their right to opt-out of the *Casados* Class and pursue their individual damages claim under the NMUPA, which the Pierces have not done.  Absent this Settlement, Safeco would have no obligation to advise these insureds

---

[4] Both Subclass A and Subclass B Members are permitted to opt-out and pursue any individual claims under the Settlement Agreement.

of equalized coverage, as maintained by Safeco in this case, or of the existence of their right to bring an individual NMUPA claim if they opt-out and choose to bring such claim.

Judge Brack, in a virtually identical class action settlement where Mr. Berardinelli represented an objector making a similar objection, examined this issue extensively in holding the NMUPA "limits class members to actual damages." **Ex. 1**, Doc. 146, Memo. Op. and Order, in *Stanforth v. Farmers Ins. Co. of Ariz.*, No. 1:09-CV-01146, at 11, attached. Just as in the *Stanforth* settlement, Mr. Berardinelli again relies on the same "flawed premise when they argue that the NMUPA permits unnamed class members to recover statutory damages even when they incurred no actual damages." *Id.* Addressing the same objections as in this case, Judge Brack held in *Stanforth* that the settlement protected the objector (Mr. Fulgenzi) because the settlement allowed Mr. Fulgenzi to opt-out and bring a claim for statutory damages under the NMUPA. *Id.* at 10-11. Just as in *Stanforth*, there is no possibility for the Pierces to obtain class relief to collect statutory damages under the NMUPA because the NMUPA excludes, under Section 57-12-10(E), class members who are not the named plaintiff from collecting the statutory damages available under the Act. This Settlement, however, protected the Pierces because this Settlement gave them notice of this claim and the opportunity to opt-out and pursue such claim, which they chose not to do.[5]

---

[5] The Pierces maintain their UPA claim does not "arise directly from any conduct by Safeco" because, according to the Pierces, the Safeco agents who sold the Pierces their policy "pre-populated" the UM/UIM rejection form and that this "is the crux of the UPA class claims" asserted by the Pierces. Doc. 84 at 13. Not only are there no "class claims" for statutory damages available under the NMUPA, which are the only damages the Pierces seek, the Pierces' attempt to distinguish the conduct of the Safeco agent that sold them Safeco insurance coverage, and had them sign a Safeco-generated rejection of UM/UIM form, from the conduct of Safeco, who developed, created, and required use of the forms used by agents selling Safeco coverage, is an argument the Pierces were free to pursue if they opted out of the Settlement in this case.

Because the NMUPA language at issue is plain and unambiguous, it must be given effect without further statutory interpretation.  In New Mexico, "[t]he text of a statute or rule is the primary, essential source of its meaning."  NMSA 1978, § 12-2A-19 (1997).  "The first guiding principle in statutory construction dictates that we look to the wording of the statute and 'attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation.'"  *United Rentals NW, Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030 ¶ 9, 148 N.M. 426, 237 P.3d 728 (brackets omitted) (quoting *Truong v. Allstate Ins. Co.*, 2010-NMSC-009 ¶ 37, 147 N.M. 583, 227 P.3d 73).  "Unless ambiguity exists, this Court must adhere to the plain meaning of the language.  Our role is to construe statutes as written and we should not second guess the legislature's policy decisions."  *State v. Maestas*, 2007-NMSC-001, ¶ 14, 140 N.M. 836, 149 P.3d 933.

The Pierces' request to certify this issue to New Mexico Supreme Court also should be denied, Doc. 84 at 15, because there is nothing unsettled under New Mexico law on the question of whether class members are entitled to collect the statutory-damages provided for individuals (including a Class Representative) under the NMUPA.[6]

## C. This Court has jurisdiction because this Settlement resolves a real case or controversy.

This Court has Article III jurisdiction for numerous reasons.  First, the Pierces incorrectly argue this Court lacks subject matter jurisdiction over the declaratory judgment count because

---

[6] Judge Brack, in *Stanforth*, examined an identical request made by Mr. Berardinelli to certify this issue to the New Mexico Supreme Court, and denied the request.  **Ex. 2**, Doc. 145, Order denying Motion for Certification of Issue to NMSC, in *Stanforth v. Farmers Ins. Co. of Ariz.*, No.  1:09-CV-01146, at 1-2, attached.

there purportedly was no live case or controversy after the *Jordan* and *Weed Warrior* cases were decided by the New Mexico Supreme Court in October 2010.  Doc. 84 at10; *see Jordan*, 2010-NMSC-051; *Weed Warrior*, 2010-NMSC-050.  The Pierces argue that after *Jordan* all UM/UIM policies in New Mexico are "self-enforcing" such that there are now automatically equal limits UM/UIM coverage under every policy.  Doc. 84 at 10.  But nothing in *Jordan* or *Weed Warrior* forced an insurer to automatically provide equal limits UM/UIM coverage under every policy.  Nothing in either opinion states or suggests that equal limits UM/UIM coverage is a self-executing result as to the insurers not parties to *Jordan* or *Weed Warrior*, which Safeco was not.[7]  Nothing prevents an insurer, as occurred in this case, from contending that its UM/UIM Selection/Rejection forms and policy documents comply with New Mexico law, and in fact Safeco denied all of Plaintiff's allegations in its Answers to Plaintiff's Complaint [Doc. 8] and Amended Complaint [Doc. 32] in this case.

Additionally, when this suit was originally filed the issue of how far back reformation would extend for non-compliant insurers was not resolved by *Williams v. Farmers Ins. Co.*, 2009-NMCA-069, 146 N.M. 515, 212 P.3d 403, *Jordan* nor *Weed Warrior*, and this also was a contested point in the underlying litigation.  This scope of retroactive application was only decided in June 2014, in *Whelan v. State Farm Mut. Auto Ins.*, 2014-NMSC-021, 329 P.3d 646, which allowed the Parties to resolve this aspect of the Settlement negotiations and finalize that the Class Period (i.e., how far back Policies would be reformed to include equalized UM/UIM coverage) goes back to

---

[7] Plaintiff notes this case was originally filed in July 2010, which is before the decisions were decided in *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214 (filed Oct. 18, 2010), and *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209 (filed Oct. 18, 2010).  These opinions provide the most current law regarding what is required to effect a valid waiver/rejection/selection of UM/UIM coverage, and were given retroactive effect.

(or begins) May 20, 2004.  *See id.* ¶ 28 (holding retroactive reformation requirements as per *Jordan* would extend back to May 20, 2004, and no further, because the date *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255, was decided was the date on which insurers were expected to understand the requirements as articulated in *Jordan*).

Second, the NMUPA claims alleged by Plaintiff in this case, Doc. 30 at 10-11, are properly directed at Safeco for the conduct of its agents because it can be alleged that all Safeco agents utilize Safeco generated forms, developed and required by Safeco, and follow Safeco protocol at all times in acting on behalf of Safeco.  As the principal, Safeco may bear liability for its agents' conduct and it is well known that class action settlements may be broader than claims alleged in the initial pleading and often include an amended complaint to modify class definitions and to add parties and claims.  *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (affirming "'[i]t is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself'") (quoted authority omitted); *Wal-Mart Stores, Inc. v. Visa, Inc.*, 396 F.3d 96, 107 & n.13 (2d Cir. 2005) (collecting cases and stating it is "well settled law" that class settlement may include all claims arising from the same "factual predicate" as the claims alleged); *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 33, 34 (1st Cir. 1991) (providing class settlement may include all claims with a "common gravamen" or that "arose out of the same transaction" as the facts alleged in the complaint); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992) (approving federal class settlement that encompassed competing state class action based on the same factual predicate); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) ("[A] court may release not only those claims alleged in the complaint and before the court,

but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint.") (quoted authority omitted); *Weinberger v. Kendrick*, 698 F.2d 61, 77 (2d Cir. 1982) (holding, "in agreement with other courts, that there is no rigid rule against the addition of new claims shortly before submission of a proposed settlement provided that proper notice and opportunity for opting out are afforded"); *In re Metro. Life Ins. Co. Sales Practices Litig.*, 1999 WL 33957871, at *5, *25 n.15 (W.D. Pa. Dec. 28, 1999) (rejecting as "unfounded" the objectors' argument that "assertion of expanded claims at the time of settlement is improper").

The Pierces attempt to distinguish their claim for statutory damages under the NMUPA as not a part of the *Casados* Class in maintaining their NMUPA claims do not "arise directly from any conduct by Safeco" because, according to the Pierces, the Safeco agents who sold the Pierces their policy "pre-populated" Safeco's computer-generated UM/UIM rejection form and this "is the crux of the UPA class claims" that the Pierces maintain should not be dismissed in this case.  Doc. 84 at 13.  But not only are there no "class claims" for nominal statutory damages available under the NMUPA, as explained above, it can be alleged that the sales protocol utilized by Safeco agents in using Safeco's pre-printed, computer-generated forms, are forms and protocol required by Safeco.  The execution of invalid UM/UIM waiver or selection forms inherently includes actions taken at the time of the sale of the policy.  The actions of Safeco's agents can be alleged to be the actions of Safeco and cannot be separated in this litigation, which specifically addresses whether or not Safeco obtained valid waivers, rejections, or selections of UM/UIM coverage.

The Pierces argue that Safeco's sales agent—not Safeco—is uniquely and entirely responsible for the Pierces never knowing "they were buying less than equal limits UM coverage," Doc. 84 at 10, never being informed of the premium costs for each level of UM/UIM coverage

available for purchase, *id.*, never being informed "they could stack all UM coverages purchased under their auto policy," *id.*, and never having been provided "any chance to make their own realistically informed choice about how much UM coverage they wanted and could afford." *Id.* This information, however, is precisely the kind of information that the *insurer* must provide its insured in order to obtain a valid waiver of UM/UIM coverage. *See Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶¶ 21-22, 149 N.M. 162, 245 P.3d 1214 (articulating *insurer* is required to meet the statutory requirements for obtaining a valid UM/UIM waiver). The onus is not first and foremost on Safeco's sales agent to ensure this information is provided to the insured, that duty is the primary responsibility of the insurer. While sales practices may play a significant part in bringing a UPA claim in any given case, the Pierces' attempt to completely divorce their Safeco insurance agent's conduct from what the law requires of the insurer is not a plausible distinction and ignores what is required under *Jordan*, *Weed Warrior*, and other settled law, as to what must be provided to an insured in waiving UM/UIM coverage.

The Pierces' argument that "the content of [Safeco's UM/UIM waiver] forms is not the issue here—nor is the equalization of UM limits," Doc. 84 at 13, is belied by the allegations and content of which they complain. All of the conduct of which the Pierces complain is directly related to what an insurer must meaningfully provide to its insureds before an insured is considered to have knowingly waived UM/UIM coverage, and it is the insurer in the first instance that is responsible for generating and developing the proper forms and policy information to convey such information. *Jordan*, 2010-NMSC-051, ¶¶ 21-22. The Pierces' claims are grounded in and are part of the same operative facts that have always constituted the claims and allegations in this case, which is that Safeco has failed to obtain valid waivers of UM/UIM coverage from its insureds, and

that these forms and policy documents mislead and deceived insureds to reject the UM/UIM coverage to which insureds were otherwise entitled.

The Pierces argue that the identification of 417 independent Safeco insurance sales-agents, Doc. 84 at 21, somehow suggests there is no jurisdiction in this case, but the naming of 417 specific agents, 416 of which have no particular relationship to Mr. or Mrs. Pierce or their claim, is of no significance.  The number of Safeco insurance agents in New Mexico does not impact the fact that there is jurisdiction in this matter where Safeco has consistently denied its UM/UIM forms do not comply with the law, or that its UM/UIM forms misrepresent to the insured the coverage available for purchase and corresponding premium costs, or that its UM/UIM forms do not allow the insured to make a knowing and informed decision as to the amount of coverage he or she can afford and wants to purchase.

The NMUPA was enacted to prevent unfair and deceptive trade practices and in this case Plaintiff has alleged that Safeco evaded its obligations to clearly and unambiguously reflect what the insured was rejecting in waiving UM/UIM coverage under a Safeco policy, which necessarily includes the selling (and waiving) of UM/UIM coverage to the insured.  Doc. 30 at 3-4, 10-11. Without question this Court has jurisdiction over the NMUPA claims in this case, including the claims of which the Pierces' complain, which are based on the same factual predicate as the claims and issues compromised as part of this Settlement.  Again, it is "widely recognized" that a class action settlement and judgment may release claims that could not have been brought in the case to begin with, for example, where exclusively state or federal claims that the approving court would have lacked jurisdiction to adjudicate are released as part of a class action settlement.  *See, e.g.*, *Grimes v. Vitalink Comm. Corp.*, 17 F.3d 1553, 1562-63 (3d Cir. 1994) ("[I]t is widely recognized that courts without jurisdiction to hear certain claims have the power to release those claims as

part of a judgment."); *Nottingham Partners*, 925 F.2d at 33-34 ("[A] federal court can approve a settlement releasing state claims not before it") (citation omitted); *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 221 (stating where "class members were notified that their state law claims might be released before they had to decide whether to opt out of the class. . . . a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint) (quoted authority omitted).[8]

The practical, public policy reason behind these well-established legal principles is that defendants have a valid interest in refusing to settle putative class actions if they cannot achieve complete peace in a single settlement. *See Blunt*, 767 F.3d at 277 ("While 'it may seem anomalous at first glance . . . that courts without jurisdiction to hear certain claims have the power to release those claims as part of a judgment . . . we have endorsed the rule because it serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action.'") (quoted authority omitted); *Malchman v. Davis*, 761 F.2d 893, 896-97, 900 (2d Cir. 1985), *abrogated on other grounds by Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) (noting that "to be sure, the class was . . . expanded to give Defendants maximum protection against further litigation" and concluding this was "a reasonable objective"); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 326 n.82 (3d Cir. 1998) (explaining that the rule allowing settlements broader than

---

[8] *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 221 ("[E]ven when the court does not have power to adjudicate a claim, it may still 'approve release of that claim as a condition of settlement of (an) action (before it).'") (quoting *Abramson v. Pennwood Investment Corp.*, 392 F.2d 759, 762 (2d Cir. 1968)).

alleged claims "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent re-litigation of settled questions at the core of a class action") (citation omitted).  If defendants cannot close the book on all actual and potential claims arising from the same core facts or claims defendants will be forced to litigate all cases rather than settle any of them.

Third, the main authority on which the Pierces rely, an order in *Valdez v. Metro. Prop. & Cas. Ins. Co.*, No. 11-0507, 2012 WL 1132414, at *27-28 (D.N.M. Mar. 31, 2012) (unpublished), dismissing a declaratory judgment action on the ground that it was not "ripe" because there was not yet a justiciable controversy, is not applicable here for several reasons. The sole claims in *Valdez* were for declaratory and injunctive relief.  *Id.* at *1-3.  Examining the injunctive relief claim, the court held that the statutory claims for injunctive relief failed because the plaintiff alleged no "irreparable injury."  Significantly the defendant in *Valdez*, Metropolitan, advised the court it was already equalizing UM/UIM coverage in accordance with requirements set forth in *Jordan*.  Then, after examining and holding the declaratory judgment claim not ripe, there was no other dispute over which the court could exercise jurisdiction.  *Id.* at *1, 21-28; *see also* 28 U.S.C. § 1367(c)(3) (providing a district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction").  Here, in contrast, independent of Plaintiff's claim for a declaratory judgment, Plaintiff has asserted on behalf of both Subclass A and B Members violations of the NMUPA, including a request for injunctive relief, which gives this Court yet another basis for jurisdiction.  Subclass A Members are permitted to opt-out of the Settlement to pursue this claim.  Unlike *Valdez*, all of these issues remained in controversy until settlement was reached by the parties.

*Valdez*, moreover, did not address whether *Jordan* required insurers to affirmatively notify their policyholders and other insureds of the right to retroactive reformation to equal limits UM/UIM coverage, or whether it would suffice to passively wait (as apparently was the practice of the insurer at issue there) until claims were made and then acknowledge those policies as reformed.  Such notice is particularly important for policyholders who (1) entirely waived UM coverage and, thus, might never know they could submit a claim after an accident (an issue even for people who had not yet been in an accident, if their policies were issued or renewed sufficiently close to the end of the Class Period that they are still in force); and (2) have family members or friends who qualify as "Insureds" under their policies, who had UM accidents, but who might not know of their rights to make a UM claim absent notice from the insurer.[9]  The extent of Safeco's obligations in this respect is just another aspect of the ripe dispute that exists with Subclass A Members, prior to this Settlement, such that the Court has jurisdiction over this action, and is a matter that will be litigated if this Settlement is dismantled and the Parties are forced back into litigation.  In addition, without receiving notice as negotiated by this Settlement, Class Members who were only Subclass A Members were unlikely to ever be aware of their right to opt-out and bring a statutory damages claim under the NMUPA.

Finally, although it does not belong in the "jurisdiction" section, the Pierces comingle jurisdiction with the commonality element of Fed. R. Civ. P. 23 in arguing commonality cannot be met because there is no "common 'injury' suffered by every Class Member because no UPA

---

[9] Without notice, "Class II" insureds are not likely to know they might be entitled to a submit a UM claim because a Class II insured is only insured by virtue of occupying or being a passenger in a non-owned insured vehicle.  *See State Farm Mut. Auto. Ins. Co. v. Safeco Ins. Co.*, 2013-NMSC-006, ¶ 9, 298 P.3d 452.  A Class II insured is not a policyholder.  A Class II insured, for example, is a permissive user borrowing a friend's car or the passenger in a friend's car involved in a collision.

*class* claims have ever been adequately alleged in this case." Doc. 84 at 21 (emphasis added). A class has sufficient commonality when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To determine whether the "commonality requirements [has] been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient. Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982); *In re Thornburg Mortg., Inc. Securities Litig.*, 912 F. Supp. 2d 1178, 1233-34 (D.N.M. 2012) (same).

Again, given that there are no valid *class* claims for statutory damages under the NMUPA, this argument is without merit. Subclass A Members like the Pierces, who did not have equalized coverage and did not have a loss caused by an uninsured/underinsured motorist, these insureds have been notified of their potential claim under the NMUPA and been notified of the opportunity to opt-out of the *Casados* Class and pursue their individual damages claim under the NMUPA. The Class claims in this case center on Defendant Safeco's breach of their duty to provide proper levels of UM/UIM coverage, and breach of their duties to properly inform their automobile policyholders of their entitlement to UM/UIM coverage, the possibility of adjustment of claims never made, and the readjustment of previously denied claims, and include claims for deceptive and misleading conduct under the NMUPA. The claims are the same for all Class Members, and all concern the duties of an insurer to provide equal limits UM/UIM coverage in the absence of a validly executed waiver or selection form as explained in *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214. The *Jordan* decision applies with equal force to all members of the Class, including the Pierces, and to Defendant Safeco.

### D.  Plaintiff Casados has standing to represent Subclass A Members.

The Pierces incorrectly argue that Plaintiff Casados, as a Subclass B Member, does not have standing to represent Subclass A Members.  Doc. 84 at 2, 20-21. The Pierces, who are Subclass A Members, maintain Plaintiff Casados, as a Subclass B Member, does not have standing to reform all Safeco Policies to equalize the UM/UIM coverage up to the liability limits of coverage for all Policies in the Class Period.   Plaintiff Casados, as Class Representative, is both a Subclass A Member and a Subclass B Member because all Subclass B Members are included in Subclass A, meaning all Subclass B Members are in fact Subclass A Members.  Plaintiff Casados therefore has standing to represent both Subclass A and Subclass B Members.

Plaintiff Casados was involved in an accident with an underinsured motorist, as understood under New Mexico law, was injured in an accident during the relevant Class Period, is an insured under a Safeco policy, and was denied UM/UIM benefits under a Safeco policy to cover his injuries and damages where Safeco did not equalize the UM/UIM coverage under the policy up to the liability limits of the policy, *inter alia*.  Doc. 30 at 2-3 (First Am. Complaint).  The distinction between the Pierces and Plaintiff Casados is that the Pierces are only members of Subclass A, who are persons who did not have equalized UM/UIM coverage during the Class Period who were not involved in an accident.  Plaintiff Casados, on the other hand, is a member of both Subclass A (Safeco Policies without equalized UM/UIM coverage) and Subclass B (persons with damage claims covered under a Safeco Policy or Policies without equalized UM/UIM coverage).  While all Subclass B Members are included in Subclass A, Subclass A Members are not included in Subclass B if the Subclass A Member was not involved in an accident and entitled to UM/UIM benefits.

As part of this Settlement, all Safeco Policies, as defined in the Settlement Agreement [Doc. 76-1 at 8, ¶ 22], from May 20, 2004 to November 1, 2014 (the Class Period), will be reformed to

18

provide equalized UM/UIM coverage. Subclass A Members are permitted under the Settlement Agreement to opt-out of this Settlement and pursue their statutory damages claim, if established, under the NMUPA, § 57-12-10(B), which is the only remedy available under the NMUPA for Class Members who do not have bodily injury or property damage claims. In other words, this Settlement permits Subclass A Members who do not also qualify as Subclass B Members to exclude themselves (i.e., "opt-out") from this Settlement, which permits the Subclass A Member to pursue any claim to the statutory damages available to individual persons under the NMUPA. § 57-12-10(B).

Given that Subclass A Members, including the Pierces, do not have valid *class* claims for statutory damages under the NMUPA, § 57-12-10(E), their argument that this Settlement "extinguishes for no consideration" these claims is without merit, Doc. 84 at 15, and there is no question that Plaintiff Casados has standing to represent both Subclasses A and B in this Settlement.

### E. None of the cases cited by the Pierces changes the plain language of the NMUPA.

Finally, it must be explained that Mr. Berardinelli, just as he did in objecting to the *Stanforth* settlement, cites to *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, 142 N.M. 437, 166 P.3d 1091, *Jones v. Gen. Motors Corp.*, 1998-NMCA-020, 124 N.M. 606, 953 P.2d 1104, and *Page & Wirtz Const. Co. v. Solomon*, 1990-NMSC-063, 110 N.M. 206, 794 P.2d 349, in this case in another attempt to overcome the statutory-damages ban on class relief under Section 57-12-10(E). Doc. 84 at 15-17. The district court in *Stanforth* discussed these cases and appropriately determined that Mr. Berardinelli's reliance on them was misplaced and neither supported his argument pertaining to statutory damages for class members under the NMUPA nor his argument for certification of the issue to the New Mexico Supreme Court. *See* **Ex 1** at 11-13; **Ex. 2** at 2. As

stated by the district court in *Stanforth*, in dismissing Mr. Berardinelli's argument, "[a]ll three cases hold that individuals may recover statutory damages in the absence of actual damages under § 57-12-10(B).  None of these cases address § 57-12-10(E)."  **Ex. 1** at 12.  Indeed, Judge Brack appropriately noted that *Page & Wirtz* and *Jones* were not class actions.

Further, while *Lohman* was a putative class action, the issue presented was only whether **the named Plaintiff** failed to allege a cognizable injury—not the putative class members.  *Lohman*, 2007-NMCA-100 ¶ 43 (emphasis added).  The Pierces make much of the concluding dictum in *Lohman*, which states that "[e]ven if Plaintiff fails ultimately to prove that he and his putative class members have suffered economic losses [i.e., actual damages], they may nevertheless seek the statutory $100 minimum."  *Lohman*, 2007-NMCA-100, ¶ 47; *see* Doc. 84 at 16.  But the *Lohman* court did not cite Section 57-12-10(E), and was addressing the named plaintiff at the center of the suit, not absent class members without actual damages.  Hence, the *Lohman* court's conclusion is consistent with its holding: if the plaintiff and the putative class members could not prove actual damages, all that would remain is the statutory minimum of $100 to the named plaintiff.  This language in *Lohman* is, at worst, imprecise, but in no way alters the only issue presented and ruled upon by the court, which was confined to the damages alleged by the named plaintiff.  The dictum in *Lohman* cannot serve to overrule the express statutory language set forth by the New Mexico Legislature in defining this purely statutory cause of action.

The Pierces also attempt to escape the section in *Brooks v. Norwest Corp.*, 2004-NMCA-134 ¶¶ 44-46, 136 N.M. 599, 103 P.3d 39, which discussed that only the named plaintiff (and not class members) has any right to recover statutory damages under the NMUPA, by dismissing that discussion as dictum. Doc. 84 at 17.  In *Brooks*, the plaintiffs alleged that Norwest bank engaged in deceptive and unfair practices related to the manner in which it posted withdrawals, and sought

to certify a class of those who incurred insufficient funds or overdraft charges as a result.  *Id.* ¶¶ 3, 37.  The state district court denied class certification on three separate, independent grounds: (i) the plaintiffs failed to provide a reliable way to identify class members pursuant to Rule 23(a); (ii) lack of predominant common issues under Rule 23(b)(3); and (iii) failure to establish a class action would be superior to individual actions under Rule 23(b)(3).  *Id*. ¶¶ 12, 13, 16.  The *Brooks* court affirmed the denial of class certification on all three grounds, *id.* ¶¶ 29, 40-41, 43-45, and with respect to Rule 23(b)(3), it is true the *Brooks* court first concluded the district court's finding that common issues did not predominate was supported by sufficient evidence such that it could have affirmed on that basis alone.  *Id.* ¶¶ 37-44.  The court, however, ruled on the superiority element "[f]or the sake of completeness."  *Id.* ¶ 44.

 *Brooks* concluded that, **because "any relief realized by class members is limited to actual damages [and] they are barred from collecting statutory or treble damages**," superiority was lacking because it "**appear[ed] to be less fair to [class] members to pursue their [NMUPA] remedy as a class action" than through individual actions**.  *Id.* (emphasis added).  *Brooks* confirms that New Mexico courts have never interpreted the NMUPA in the manner in which the Pierces assert in their attempt to argue there are statutory-damage *class* claims available under the NMUPA.

### Conclusion

 For the foregoing reasons, Mr. and Mrs. Pierce's and Mr. Brown's objections are without merit and the *Casados* Settlement should be approved.

      Respectfully submitted,

      /s/ Erin B. O'Connell
      Erin B. O'Connell
      O'Connell Law LLC

4801 All Saints Road NW
Albuquerque, NM 87120
(505) 792-3746

Geoffrey R. Romero
Law Offices of Geoffrey R. Romero
4801 All Saints Road NW
Albuquerque, NM 87120
(505) 247-3338

Joseph Goldberg
David A. Freedman
Vincent J. Ward
Freedman Boyd Hollander Goldberg  Urias & Ward
20 First Plaza, Suite 700
Albuquerque, NM 87102
(505) 842-9960

Ray M. Vargas, II
The Vargas Law Firm, LLC
807 Silver Ave. SW
Albuquerque, NM 87102
(505) 242-1670

Matthew L. Garcia
Garcia Ives Nowara LLC
924 Second Street NW, Suite A
Albuquerque, NM 87102
(505) 899-1030

David P. Garcia
The Law Firm of David P. Garcia PC
303 Paseo de Peralta
Santa Fe, NM 87501
(505) 982-1873

*Attorneys for Plaintiff, for himself and all others similarly situated*

I hereby certify that on September 28, 2015, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means.

/s/ Erin B. O'Connell
Erin B. O'Connell