# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JASON CASADOS, on behalf of himself
and for others similarly situated,

Plaintiffs,

v.                                                      No. CIV 10-751 JAP/SMV

SAFECO INSURANCE COMPANY
OF AMERICA,

Defendant.

## MEMORANDUM OPINION AND ORDER

This putative class action lawsuit raises claims concerning uninsured/underinsured

motorist (UM/UIM) insurance coverage that Plaintiff Jason Casados and similarly situated New

Mexico citizens purchased from Defendant Safeco Insurance Company of America (Safeco). *See*

FIRST AMENDED CLASS ACTION COMPLAINT FOR BREACH OF STATUTORY,

COMMON LAW, AND CONTRACTUAL DUTIES (Complaint) (Doc. No. 30). After

conducting settlement negotiations, the parties entered into a Settlement Agreement (Doc. No.

76–1) on June 4, 2015. Subsequently, the Court entered an ORDER PRELIMINARILY

APPROVING SETTLEMENT, APPROVING NOTICE TO SETTLEMENT CLASS

MEMBERS, AND SETTING DATE FOR FINAL APPROVAL HEARING (Order) (Doc. No.

78). The Court conditionally certified, for settlement purposes only, a Settlement Class and

Subclasses A and B. Order at 12. The Order preliminarily approved Notice and Claim Forms,

and those forms were sent out. *Id.* ¶¶ 5, 11, 12. The Court expressly reserved the right to enter

final approval of the settlement after considering objections and after conducting a Settlement

Fairness Approval Hearing (Fairness Hearing). *Id.* ¶¶ 4, 8, 14.

1

Plaintiff filed an unopposed MOTION FOR FINAL APPROVAL OF SETTLEMENT with an accompanying brief and a copy of the Settlement Agreement. (Motion for Final Approval) (Doc. Nos. 88, 89). In deciding whether to issue final approval of the Settlement, the Court reviewed the Motion for Final Approval, an OBJECTION TO THE FINAL APPROVAL OF THE CASADOS CLASS SETTLEMENT AGREEMENT ON BEHALF OF SAFECO OBJECTORS MARK AND AMANDA PEIRCE AND LIBERTY MUTUAL OBJECTOR JEFFREY BROWN (Objection) (Doc. No. 84), DEFENDANT'S RESPONSE IN OPPOSITION TO OBJECTION TO FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT BY MARK AND AMANDA PIERCE AND JEFFREY BROWN (Safeco's Response) (Doc. No. 87), PLAINTIFF'S RESPONSE TO OBJECTORS MARK AND AMANDA PIERCE AND OBJECTOR JEFFREY BROWN (Plaintiff's Response) (Doc. No. 92), and the Objectors' AMENDED REPLY ON OBJECTION TO FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT (Reply) (Doc. No. 94). After carefully considering the pertinent law, briefing, and attachments, as well as argument by counsel for the parties and the Objectors at a Fairness Hearing on October 8, 2015, the Court sustains in part and overrules in part the Objection. For the reasons discussed below, Court will not approve settlement with respect to Subclass A policyholders. Because of this ruling, the Court does not reach Class Plaintiffs' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND INCENTIVE PAYMENT TO CLASS REPRESENTATIVE (Doc. Nos. 91, 92).

**Background**

In 2010, Plaintiff Casados filed this class action lawsuit against Safeco, alleging that Safeco wrongfully denied proper UM/UIM motorist coverage to its policyholders. Plaintiff asserted claims under the New Mexico Unfair Practices Act (UPA) and other New Mexico state

laws. Doc. No. 1–1. Plaintiff requested monetary damages and injunctive and declaratory relief. On August 12, 2010, Safeco removed the case to federal court. Doc. No. 1. In September 2010, Safeco sought and obtained a stay of this proceeding pending the New Mexico Supreme Court's resolution of several cases that involved the proper interpretation of the pertinent New Mexico uninsured motorist statute. On April 15, 2013, the Court lifted the stay after the New Mexico Supreme Court issued opinions in *Progressive Northwestern Ins. Co. v. Weed Warrior Servs.*, 149 N.M. 157 (2010) and *Jordan v. Allstate Ins. Co.*, 149 N.M. 162 (2010). These cases clarified that (1) New Mexico law requires insurers to offer their customers UM/UIM coverage in an amount equal to the liability limits of the policy, and (2) to be valid, a customer's rejection of UM/UIM coverage equal to the liability limits must be made in writing and must be made part of the insurance policy that is delivered to the insured. In *Jordan*, the New Mexico Supreme Court applied both holdings retroactively and explained that in any case where an insurer had failed to obtain a valid rejection of UM/UIM coverage "the proper remedy … is to reform the policies to provide UM/UIM coverage equal to the liability limits." *Jordan*, 149 N.M. at 171.

In light of these rulings, Plaintiff filed a First Amended Complaint, re-stating Plaintiff Casados' claims against Safeco and adding a new plaintiff, Susan Mulvaney, with claims against two new Defendants: Liberty Mutual Insurance Group Inc. and Liberty Mutual Fire Insurance Company (Liberty). Doc. No. 30. The Liberty Defendants moved to dismiss the claims against them, and on March 5, 2014, the Court granted their motion, dismissing Plaintiff Mulvaney and the Liberty Defendants from this lawsuit. MEMORANDUM OPINION AND ORDER (Doc. No. 55). Safeco did not move to dismiss Plaintiff Casados' claims, which proceeded.

In the spring of 2015, the parties' counsel informed the Court that they had reached a proposed settlement. On June 5, 2015, the parties filed a joint motion for preliminary approval of

the settlement and for preliminary certification of the settlement class. As noted, the Court

entered an Order preliminarily certifying the settlement. The Order set deadlines for the Class

Notice to be issued, for claimants to opt out of the preliminary settlement, and for objections to

be filed. Those deadlines have all passed.

In the Motion for Final Approval, Plaintiff estimated that the potential Class consisted of

over 28,000 insureds and policyholders. Doc. No. 89 at 19. As of September 2015, about 133

individuals had submitted claims. *Id.* Approximately ten individuals submitted opt-out forms.

Doc. No. 95. The Pierces and Mr. Brown are the only objectors. *See* Objection.

### Terms of the Proposed Settlement

The Settlement Class consists of New Mexicans who were insured under a Safeco policy

issued, renewed, or effective between May 20, 2004 and November 1, 2014, which did not

provide UM/UIM coverage with limits equal to liability limits ("equalized UM/UIM coverage")

for all vehicles covered by the policy. Order at 2. The Settlement Class is divided into two

subclasses: Subclass A and Subclass B. Settlement Agreement at 9–10 ("Definitions").[1]

**A.  Subclass A Policyholders** (Subclass A Policy Reformation Members)

Subclass A Policy Reformation Members failed to receive equalized UM/UIM coverage

during the pertinent ten-year time frame and are part of the Settlement Class. *Id.* at 11. Under the

Settlement Agreement, Subclass A Policy Reformation Members are entitled to notice that their

Safeco policies are reformed to provide equalized UM/UIM coverage. *Id*. at 15 Under the section

"Benefits for Subclass A Members," notice of reformation and reformation of the policies are the

only benefits listed for Subclass A Policy Reformation Members. Subclass A Policy Reformation

Members did not suffer any injuries or damages for which they can submit claims and do not

receive any monetary benefit from the settlement. *See id.* at 10, 11, 14. Subclass A Policy

---

[1] The Court summarizes only some of the 42-page Settlement Agreement (Doc. No. 76–1).

Reformation Members may opt out of the settlement and preserve any claims they may have under New Mexico's UPA, § 57-12-10(B), including statutory or monetary damages claims. *Id.* at 11, 36. If they fail to opt out, the Settlement Agreement extinguishes Subclass A Policy Reformation Members' UPA claims against Safeco.

### B. **Subclass B Policyholders** (Subclass B Claimants)

Subclass B Claimants were involved in accidents during the pertinent time frame and suffered damages and losses. They are entitled to a Settlement Payment under the terms of the Settlement Agreement. The amount of the Settlement Payment is calculated at specific percentages of up to 90 and 100% "of the claim value determined by Safeco or the Referee if the Subclass B [Claimant] previously submitted a UM/UIM claim to Safeco relating to the loss…." *Id.* at 11, 19–20.

Subclass B Claimants qualify as part of Subclass A because Subclass B Claimants have policies that failed to provide them with equalized UM/UIM coverage during the pertinent time frame. *See id.* at 11. Thus, Subclass B Claimants also receive the same notice and reformation of policies that Subclass A Policy Reformation Members receive. *Id.* at 15.

But, Subclass A Policy Reformation Members do not qualify as Subclass B unless they suffered damages and losses. *Id.* Simply put, Subclass A Policy Reformation Members were not involved in accidents for which they can make claims, while Subclass B Claimants were in accidents and did or can make claims.

### Objections

### A. **Objector Jeffrey Brown** (Mr. Brown)

Jeffrey Brown is a Liberty policyholder who objects to the proposed settlement on the basis that the Settlement Agreement improperly releases claims against the previously dismissed

Liberty Defendants. Objection at 3–5, 7–8. Safeco argues *inter alia* that the Liberty Defendants are not encompassed "within the scope of the Releases under the Settlement Agreement[,]" and that the Court should, therefore, deny Mr. Brown's objection. Safeco's Response at 16–17. *See also* Plaintiff's Response at 4–5. In the Amended Reply, the Objectors state that they accept the "judicial admission" of both parties and withdraw Mr. Brown's objection. Reply at 2. At the October 8, 2015 Fairness Hearing, counsel for Mr. Brown again stated that he agreed to withdraw Mr. Brown's objection based on the parties' representations that the Settlement Agreement does not release claims against the Liberty Defendants. (Minutes, 10/18/15 Fairness Hearing) (Doc. No. 96). The Court will approve the Objectors' withdrawal of Mr. Brown's objection, and therefore, does not consider Mr. Brown's opposition to the Settlement Agreement. *See* Fed. R. Civ. P. 23(e) (objections to class settlement may be withdrawn only with court approval).

   **B. <u>Objectors Mark and Amanda Pierce</u>** (Objectors or the Pierces)

   The Pierces are Safeco policyholders who are Subclass A Policy Reformation Members who do not qualify as Subclass B Claimants. Objection at 8–9. The Pierces generally object to the Settlement Agreement on the ground that it "artificially ropes in [Subclass A Policy Reformation Members] who … were never entitled to make a UM claim, solely for the purpose of extinguishing their right to seek a UPA *class* remedy, and possible statutory claims for no consideration." Objection at 1–2 (emphasis in original). The Pierces challenge the propriety of certifying the proposed class, namely with respect to the requirements of commonality and adequacy of representation under Rule 23(a). The Pierces also argue that because Subclass A Policy Reformation Members lack standing to bring claims for declaratory relief, it follows that the Court cannot have jurisdiction to issue the declaratory relief contemplated by the Settlement

Agreement. *Id.* at 2–3. However, the Pierces' strongest objection is to the fairness of the proposed settlement under Rule 23(e) even though neither the Objection nor the Amended Reply actually cite Rule 23(e).

## Legal Standards

Rule 23(e) provides that a court may approve a settlement that would bind class members only after a hearing and on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). However, because this case was not certified as a class action prior to settlement, the parties seeking certification of a settlement must satisfy the same requirements as plaintiffs seeking certification of a litigation class. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 621–22 (fairness hearing under Rule 23(e) does not adequately substitute for failure of class certification movants to demonstrate satisfaction of Rule 23(a) and (b) requirements). *See also Tennille v. Western Union Co.*, 785 F.3d 422, 430 n. 5 (10th Cir. 2015) (affirming district court's ruling on objections to a settlement class while observing that the plaintiffs had to meet Rule 23(a) and Rule 23(b) requirements). Thus, before analyzing the fairness of the settlement under Rule 23(e), the Court scrutinizes whether the Rule 23(a) and (b) requirements are met.

Moreover, as instructed by the Supreme Court in *Amchem*, the Court will not reach the Objectors' jurisdictional challenges until it resolves the class certification issues under Rule 23. *See Anchem*, 521 U.S. at 612 ("[t]he class certification issues are dispositive," [and] "because their resolution … is logically antecedent to the existence of any Article III [jurisdictional] issues, it is appropriate to reach them first …." (citations omitted). *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (the Rule 23 class certification issues were "logically antecedent" to Article III concerns, and because the Rule 23 issues pertained to statutory standing, they were properly addressed before Article III standing).

**Discussion**

**A.  Rule 23(a) Requirements ("Prerequisites")**

Under Rule 23(a), the parties must demonstrate:

>    (1) the class is so numerous that joinder of all members is
>        impracticable;

>    (2) there are questions of law or fact common to the class;

>    (3) the claims or defenses of the representative parties are typical
>        of the claims or defenses of the class; and

>    (4) the representative parties will fairly and adequately protect the
>        interests of the class.

Fed. R. Civ. P. 23(a). In order to certify a class under Rule 23, the trial court must be satisfied,

"after a rigorous analysis," that each of the Rule 23(a) prerequisites is satisfied. *Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The decision whether to certify an action as a class

action is committed to the discretion of the trial court. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th

Cir. 1988).

>    **1)** *Rule 23(a)(1) Numerosity; Rule 23(a)(2) Commonality; Rule 23(a)(3) Typicality*

>        a.    Numerosity

Numerosity requires that a class be "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). "Plaintiffs must offer 'some evidence of established,

ascertainable numbers constituting the class,' but there is 'no set formula to determine if the class

is so numerous that it should be so certified.'" *Colo. Cross-Disability Coal. v. Abercrombie &*

*Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (citation omitted).

Plaintiff states that the potential class consists of over 28,000 insureds and policyholders,

based on information provided by Safeco. As of late September 2015, approximately 133

individuals had submitted claims. Motion for Final Approval at 19. There are no objections

based on numerosity, and the Court finds that Plaintiff has adequately demonstrated that joinder of all members of a class this size is impracticable.

    b. <u>Commonality</u>

  A party seeking certification under Rule 23(a) must affirmatively demonstrate that "there are *in fact*" common questions of law or fact. *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (emphasis in original); Fed. R. Civ. P. 23(a)(2).

> [T]he mere raising of a common question does not automatically satisfy Rule 23(a)'s commonality requirement. Rather, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Id.* at 1218 (citations omitted). For purposes of Rule 23(a)(2), "even a single common question will do." *Dukes,* 131 S.Ct. at 2556 (quotation marks, brackets, and citations omitted); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) (finding of commonality requires only a single question of law or fact common to the entire class).

  The Objectors submit several lines of argument as to why the commonality prerequisite cannot be met: (1) Subclass B claims for damages resulting from accidents are "fundamentally different" than claims of Subclass A Policy Reformation Members; and (2) the class members have not adequately alleged a UPA class claim. Objection at 21. The Pierces also assert that the class members have not all suffered the "same injury" and that there is no "justiciable legal issue that is common to every [c]lass [m]ember for purposes of satisfying Rule 23(a)(2). *Id.* Objectors fail to specify how Plaintiff Casados' claims are "fundamentally different" than those of

Subclass A Policy Reformation Members. *See id*. The Objectors' challenge to Rule 23(a)

commonality is also interspersed with argument about jurisdiction. *See id.* at 20, 24.[2]

The Court concludes that although there are differences in the claims or relief sought by

the two subclasses, this alone does not defeat a finding of commonality. "[E]very member of the

class need not be in a situation identical to that of the named plaintiff" to meet Rule 23(a)'s

commonality or typicality requirements. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982)

(citation omitted). Moreover, factual differences between class members' claims will not defeat

certification where common questions of law exist. *Id.*

The Court finds that there is significant overlap between the Subclass A and Subclass B

claims. All class members' claims depend on whether Safeco obtained adequate written

rejections of UM/UIM coverage when issuing policies that lacked equalized UM/UIM coverage,

and/or whether Safeco breached its duty in providing proper levels of UM/UIM coverage. *See*

First Amended Complaint ¶¶ 18–20, 32–33, 40. Moreover, contrary to the Pierces' position, the

First Amended Complaint clearly alleges a UPA class action claim. *Id.* ¶¶ 36, 47–51. In addition,

common questions of law exist with respect to all class members' rights in terms of the

application and interpretation of New Mexico law. *See, e.g., Jordan*, 149 N.M. 162.

---

[2] It is difficult to make sense of the Pierces' jumble of arguments in their Objection. In the first five pages, the Pierces argue that the Court lacks jurisdiction to issue declaratory relief. Objection at 1–5. It is not obvious what point the Pierces seek to emphasize by next summarizing "collateral cases." *Id.* at 5–7. The Pierces then devote three pages in describing the Pierces' transactions with individual Safeco agents apparently to support their UPA argument. *Id.* at 7–10. In the following five pages, the Pierces quote extensively from New Mexico law and discuss the role of "independent contractor insurance sales agents" as well as the "deceptive sales practice" of "pre-populating UM Section/Rejection Forms." *Id.* at 10–15. Then the Pierces request certification to the New Mexico Supreme Court of the "real question" (whether the UPA class remedy allows absent Subclass A Policy Reformation members to recover statutory damages in the absence of any showing of actual damages). *Id.* at 15–18. At pages 18–24, the Pierces return to the lack of jurisdiction argument, which briefly detours into an argument about Rule 23(a) certification issues. *Id.* at 21–22. The Amended Reply similarly furnishes little additional clarity. The Court has done its best to extract cogent argument from the Pierces' Objection.

The Court concludes that the commonality requirement is met for purposes of Rule 23(a) certification. There is at least a single issue of law or fact common to the entire class. Therefore, the Court overrules the Pierces' Objection as to commonality.

> c.     Typicality

Rule 23(a) requirements of commonality and typicality tend to merge. *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982). Both requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). The interests and claims of a representative and class members need not be identical to satisfy typicality. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982). For example, differing fact situations of the class members will not defeat typicality where the representative's and class members' claims are based on the same legal or remedial theory. *Stricklin*, 594 F.3d at 1198-99.

Similar to its finding of commonality, the Court concludes that typicality exists because the named representative's claims are typical of the claims of the class. The named representative, similar to the rest of the class, alleges that Safeco failed to provide him with the required equalized UM/UIM coverage and that Safeco failed to obtain a valid rejection of equalized UM/UIM coverage. The fact that some class members suffered injuries as a result of accidents and will be able to recover monetary damages, in contrast to class members who were not injured in accidents, does not defeat typicality. The named representative and all class

11

members allege that they were subjected to similar unlawful practices by Safeco. Moreover, the Pierces make no objection as to typicality.

### 2) *Rule 23(a)(4) Adequacy of Representation*

The class representative must "fairly and adequately protect the interests of the class" to satisfy the requirements of Rule 23(a)(4). Fed. R. Civ. P. 23(a)(4). The adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality criteria of Rule 23(a). *Falcon*, 457 U.S. at 157–58 n. 13. For example, similar to commonality and typicality, the class representative and class members "must share common objectives and legal or factual positions," although they need not be identical. *Tennille*, 785 F.3d at 430. The class representative's interest must be "coextensive with the interest of the class." *Id.*

However, the adequacy-of-representation inquiry also "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (citation omitted). "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Id.* (brackets and citation omitted).

The Pierces argue that the class representative cannot adequately represent the interests of the Subclass A Policy Reformation Members because "a significant dissimilarity exists between the circumstances of the Class Representative and the [Subclass A Policy Reformation Members] due to the aleatory nature of the insurance policies at issue. Due to this aleatory nature, Safeco has never been under a duty to perform any obligations under [Subclass A Policy Reformation Members'] policies." Objection at 22. Although the Pierces summarily refer to an "inherent conflict between the class Representative and the non-claimant Class Members[,]" the Objectors fail to specify a "conflict that goes to the very subject matter of the litigation." Instead, the

Objectors contend that the Settlement Agreement's right to opt out provision cannot avoid a conflict of interest. *Id.* at 22–23.

Subclass B Claimants are entitled to monetary damages as a result of the settlement, while Subclass A Policy Reformation Members can only obtain reformation of Safeco policies during the pertinent time frame unless Subclass A Policy Reformation Members opt out of the settlement and pursue statutory damages under the UPA. Thus, it is true that the class representative has different damages and, therefore, different interests than the majority of Subclass A Policy Reformation Members. For example, the class representative may be less interested in pursuing a possible monetary damages claim under the UPA than the Subclass A Policy Reformation Members.

In *Tennille*, a similar argument was raised where the objector argued that the four named plaintiffs could not adequately protect the interest of the entire class because the named plaintiffs had already reclaimed their money from the defendant in contrast with the objector who had not. *Id.*, 785 F.3d at 433. The named plaintiffs in *Tennille* sought only to recover interest that was owed to them by the defendant, while the defendant continued to hold the monies owed to the objector and class members similarly situated to her. *Id.* The Tenth Circuit Court noted that the difference in circumstances itself was not sufficient to show inadequacy of representation by the named plaintiffs because the defendant's "challenged conduct was the same toward all class members." *Id.* The same is true here. Although circumstances differ between those class members who did and did not suffer qualifying accidents, Safeco treated them all similarly in failing to provide them with equalized UM/UIM coverage.

Also of significance is the Tenth Circuit Court's determination that the objector's argument in *Tennille* was actually a challenge to the fairness of the settlement rather than to

adequacy of representation. *Id.* at 433–34. The objector in *Tennille* took the position that since the named plaintiffs already possessed the bulk of monies owed to them, the named plaintiffs had negotiated a settlement that might result in the objector and similarly situated class members not recovering all of the money the defendant owed them. *Id.* In other words, the objector challenged the named plaintiffs' incentive to adequately protect the objector's interests. The Tenth Circuit construed this argument as a challenge to whether the settlement was "fair, reasonable, and adequate" under Rule 23(e) rather than whether the named representative could adequately represent all class members' interests under Rule 23(a). *Id.* at 434.

The Court is concerned about the adequacy of representation under circumstances where the named representative and the Objectors have different injuries and where the named representative may not be motivated to protect the Objectors' interests in pursuing UPA damages claims. However, the Tenth Circuit has indicated that claims of inadequate representation in class action settlement negotiations can be cured by an objector's participation in the settlement approval process. *Rutter and Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002), *cert. denied*, 539 U.S. 915 (2003) (citation omitted). Here, counsel for the Pierces sought discovery on their behalf and filed lengthy briefs to support the Objection. In addition, counsel for the Pierces appeared at the Fairness Hearing, and the Court heard argument as to the Pierces' position.

The Court, therefore, concludes that any concerns about the potential conflict between the named representative and the different class members have been resolved through the objection process and by the Court's careful consideration of the Objectors' challenges to the settlement. Thus, the Court finds that the named representative and his attorney have vigorously prosecuted this action on behalf of the entire class and that there is no disabling conflict of interest.

Moreover, as in *Tennille*, the Court finds that the Objectors' argument is more properly considered under Rule 23(e) standards.

In sum, all of the Rule 23(a) prerequisites are met with respect to Subclass A Policy Reformation Members and Subclass B Claimants.

### B.  Rule 23(b) Requirements ("Types of Class Action")

The Settlement Agreement provides that Subclass A Policy Reformation Members, who do not also qualify as Subclass B Claimants, will be certified *only* under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Doc. No. 76–1 at 11. Rule 23(b)(2) addresses class claims for injunctive or declaratory relief. *See Dukes*, 131 S. Ct. at 2557 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class").

In addition, Plaintiff asserts that certification of a damages class under Rule 23(b)(3) is appropriate for Subclass B Claimants. Motion at 22. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1298 (10th Cir. 1999) (Rule 23(b)(3) classes "generally involve highly individualized claims or require an individualized plaintiff-by-plaintiff determination of monetary damages").

Consistent with the parties' representations, the Court discusses the requirements of only these two types of class actions, i.e., Rule 23(b)(2) and 23(b)(3). The Objectors do not present any specific challenges as to the types of classes to be certified under Rule 23(b).

### 1)  *Subclass B Claimants: Rule 23(b)(3) damages class*

In order for the Court to certify a Rule 23(b)(3) damages class, Plaintiff must satisfy the Rule 23(a) prerequisites and demonstrate that:

> … questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). The Court concludes that all members of both subclasses have a common grievance against Safeco arising from a common set of facts: that being, Safeco's failure to provide all class members equalized UM/UIM coverage. Thus, questions common to the class members predominate over individual concerns. Moreover, the Pierces present no objection to certifying the damages class for Subclass B Claimants. The Pierces agree that the Subclass B Claimants should be fully compensated for their losses. Objection at 1.

In addition, the Court finds that a class action is superior to other available methods for the fair and efficient settlement of this lawsuit. The potential Class consists of over 28,000 insureds and policyholders. Doc. No. 89 at 19. A class action clearly is the most efficient use of judicial resources in resolving common claims of a class this size. Therefore, the Court is satisfied that the predominance and superiority requirements under Rule 23(b)(3) are met with respect to the Subclass B Claimants.

### 2) *Subclass A Policy Reformation Members: Rule 23(b)(2) declaratory relief class*

In order for the Court to certify a Rule 23(b)(2) declaratory or injunctive relief class, Plaintiff must satisfy the Rule 23(a) prerequisites and demonstrate that:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). With respect to Subclass A Policy Reformation Members and the proposed Rule 23(b)(2) class, the Pierces raise no objection to a finding that Safeco has acted or refused to act on grounds that apply generally to the class. They agree that the Safeco policies in question failed to provide equalized UM/UIM coverage for all members of both subclasses. *See* Objection at 8. Rather than objecting to certification of a Rule 23(b)(2) class, the Pierces'

position is that the Court lacks jurisdiction to issue declaratory relief, an argument that the Court addresses below.

The Court observes that, for purposes of a Rule 23(b)(2) class, the Settlement Agreement provides that Safeco will equalize the UM/UIM coverage for all class members as a result of Safeco's failures to provide equalized UM/UIM coverage or to obtain valid written rejections of equalized UM/UIM coverage. Settlement Agreement at 11, 15. Thus, with respect reformation of the Safeco policies to provide equalized UM/UIM coverage, the Court finds that specific declaratory or injunctive relief can be fashioned to reform all class members' Safeco policies and to enjoin Safeco from further engaging in this same violative conduct. *See Stricklin*, 594 F.3d at 1199–1200. Safeco's misconduct and the relief sought by Subclass A Policy Reformation Members are both generally applicable to each member of the approximately 28,000–member class. In other words, the Objectors do not take the position that Subclass A Policy Reformation Members are primarily entitled to monetary damages and to certification of a damages class under Rule 23(b)(3). Objectors admit they "have not suffered any injuries or losses caused by an uninsured or underinsured motorist since their Safeco policy was issued." Objection at 8.

This does not appear to be a case where individual issues destroy the necessary class cohesiveness necessary for a Rule 23(b)(2) type of class action, nor do Objectors make this argument. *Compare Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 608 (10th Cir. 2008) (affirming district court's decision not to certify a class under Rule 23(b)(2)). Thus, the Court determines that the Rule 23(b)(2) prerequisites are met with respect to the Subclass A Policy Reformation Members.

## C.  Rule 23(e) Settlement of Class Action[3]

Under Rule 23(e), a Court will approve a settlement class after a hearing and if the Court finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In evaluating a proposed settlement, the Court's main concern is to ensure that the rights of passive class members are not jeopardized. *See* 7B Charles Alan Wright, et al., *Federal Practice & Procedure* § 1797. 1, at 79 (3d ed. 2005). The Court applies a heightened degree of scrutiny when determining the fairness of a settlement that is negotiated before class certification. *See Amchem*, 521 U.S. at 620. "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re New Mexico Natural Gas Antitrust Litig.*, 607 F. Supp. 1491, 1497 (D. Colo. 1984) (citation omitted). The denial of all relief to a particular class or subclass might be a warning sign to the court that a proposed settlement is not fair. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785–86 (7th Cir. 2004).

In deciding if a class settlement is "fair, reasonable, and adequate" under Rule 23(e)(2), the district court considers whether:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.

---

[3] It is unclear whether the Court should analyze Objectors' jurisdictional argument before scrutinizing the fairness of the settlement under Rule 23(e) or vice versa. *See Ortiz*, 527 U.S. at 831 (Rule 23 certification issues are logically antecedent to Article III concerns). The parties and Objectors did not address this matter, and it is not clear whether a determination as to the "Rule 23 certification issues" would include an analysis of the fairness of the settlement under Rule 23(e). The Court will proceed to an analysis under Rule 23(e), the resolution of which may make a discussion of jurisdiction unnecessary. However, in an abundance of caution, the Court also addresses the Objectors' jurisdictional challenge. *See infra.*

*Tennille*, 785 F.3d at 434 (citation omitted). The Objectors do not recite or discuss any of the four factors employed by the Tenth Circuit. The Court finds that there is no opposition with respect to the first, second, and fourth factors.

### 1) *Fair and Honest Negotiation*

The Court is satisfied that the settlement was fairly and honestly negotiated. The parties, through experienced counsel, engaged in arms-length negotiations to arrive at a proposed settlement of this litigation. According to Plaintiff's unopposed Motion for Final Approval, the settlement resulted from extensive negotiations consisting of multiple meetings, conference calls, and exchanges of the respective views of the merits of the claims. Motion for Final Approval at 14. Plaintiff attests that the Settlement Agreement affords many hundreds of class members a first or second opportunity to receive UM/UIM benefits for car accidents that resulted in injuries. Without a settlement, class members might not have known of their rights to assert claims for UM/UIM coverage. *Id.*

### 2) *Serious Legal and Factual Questions*

The Court is also convinced that sufficient legal and factual issues existed to place this litigation in doubt. Plaintiff represents that due to the 10–year length of the class period, there might have been statute of limitations defenses to overcome. Vastly different damages estimates would have been provided through expert witnesses. *Id.* at 15–16. Undoubtedly, the Court would have faced *Daubert* motions to exclude expert testimony and motions for summary judgment as to the various claims. While Plaintiff concedes that the "Class Plaintiff has uncovered compelling evidence supporting the allegations at issue," the Court concludes that there are no assurances as to a jury's resolution of the complex issues raised in this litigation. *Wilkerson v.*

*Martin Marietta Corp*., 171 F.R.D. 273, 285 (D. Colo. 1997) (noting that it was not subject to debate that "the ultimate jury result is uncertain, unknown and unpredictable").

### 3) *Parties' Belief that Settlement is Fair and Reasonable*

Regarding the fourth factor to consider in the fairness of a settlement, the Court relies on the judgment of experienced counsel in evaluating whether the parties believed the settlement was fair and reasonable. *See id.* at 288–89.  Here, Plaintiff's counsel asserts that they are among the most experienced and respected class action, personal injury, and insurance attorneys in the State of New Mexico and the country. Motion for Final Approval at 17. In addition, Plaintiff's attorneys represent that they have "tirelessly advanced the Class's claims since the case's inception, and that they believe the settlement is fair and reasonable and that it represents an excellent result for the Class." *Id.* There was no opposition to Plaintiff's representations.

In addition to relying on Plaintiff's unopposed representations, the Court is aware that the Pierces and Mr. Brown were the only parties to file objections to the proposed settlement and that very few parties, perhaps as many as ten, have filed notices to opt out of the Settlement Agreement. The small number of objections and the relatively few elections to opt out of a settlement agreement may be indicative of the adequacy of the settlement. *See Rutter & Wilbanks Corp*., 314 F.3d at 1189 (noting that a settlement "from which an extremely small percentage of class members opted out, was fair, reasonable, and adequate"); *Williams v. Sprint/United Mgmt. Co*., 2007 WL 2694029, at *4, No. 03–2200–JWL (D. Kan. Sept. 11, 2007) (while not controlling, "a relatively small number of objectors can be taken as 'some indication that the class members as a group did not think the settlement was unfair'") (unpublished) (citation omitted). *See also, Make a Difference Foundation, Inc. v. Hopkins*, 2012 WL 917283, at *3, Civil Action No. 10–cv–00408–WJM–MJW (D. Colo. Mar. 19, 2012) (unpublished)

(collecting cases for the same proposition ). The Court concludes that Plaintiff has presented

sufficient indicia of the parties' belief that the settlement is fair and reasonable.

**4)** ***Value of Immediate Recovery***

The Pierces argue that the Settlement Agreement "artificially ropes in [Subclass A Policy

Reformation Members] … who, like Objectors, were never entitled to make a UM claim, solely

for the purpose of extinguishing their right to see a UPA class remedy, and possible statutory

damages, for no consideration." Objection at 1–2. The Court construes this objection as a

challenge to the third factor of the *Tennille* test or to the value of immediate recovery versus the

possibility of a more favorable outcome after further litigation. Essentially, the Pierces assert that

Subclass A Policy Reformation Members' entitlement to nothing more than the reformation of

the members' previous Safeco policies has no value at all and is unfair. *See* Objection at 15

("There was no reason for these parties to include as Class Members those Safeco policyholders

who never had a UM claim—other than to allow Safeco to extinguish all UPA class liability for

no consideration, not only for itself but also for its non-party independent contractor insurance

sales agents.").

a.   Class Remedy under New Mexico's Unfair Practices Act (UPA)

The Objectors contend that the proposed settlement is unfair because it requires them to

give up viable class action litigation under the UPA without any consideration at all. Objection at

1–2, 10–15. The Objectors contemplate a future class action under the UPA against independent

contractor New Mexico insurance sales agents whom they allege routinely engage in unlawful

deceptive sales practices or in unconscionable sales practices in violation of the UPA. *Id.* at 13,

15. The Objectors argue that the 98% majority of Safeco policy holders,[4] who never had UM

---

[4] Although the Pierces supply a footnote in support of this percentage, it is not entirely clear how the Objectors
arrived at the 98% estimate. Objection at 15 n.4.

claims, were "victims of the longstanding pattern of deceptive and unconscionable sales practices…." *Id.*

Although the Objectors take great pains to detail the basis of a possible UPA class action claim, the fly in the ointment is that the UPA does not necessarily permit the types of damages they seek. The UPA states that any "person who suffers any loss of money or property, real or personal … may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater." NMSA 1978 § 57-12-10(B). However, with respect to a class action, the UPA states the following:

> In any class action filed under this section, the court may award damages to the named plaintiffs as provided in Subsection B of this section and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice.

§ 57-12-10(E). According to the parties, the UPA language is clear–the statute explicitly limits unnamed class members' recovery to *actual* damages, which this proposed class (Subclass A Policy Reformation Members) does not have. Safeco Response at 5; Plaintiff's Response at 5–8. Put differently, under the plain language of the UPA, the Subclass A Policy Reformation Members cannot recover class-wide statutory damages; only the named plaintiffs of a class action can pursue statutory damages under § 57-12-10(B). *Id.* Thus, it is the parties' position that the Subclass A Policy Reformation Members have no viable class remedy under the UPA. *Id.* Plaintiff also observes that these class members who have suffered no actual damages and who cannot recover class-wide statutory nominal damages under the UPA, could have excluded themselves from the settlement to pursue individual claims for statutory damages under § 57-12-10(B). Plaintiff's Response at 5-6. While the Pierces were provided notice of this settlement and

their right to opt out of the *Casados* class to pursue their individual damages claim under the UPA, they did not do so. *Id.* at 6.

The Objectors contend that the UPA language is not clear at all and that New Mexico law is conflicting on this issue. Amended Reply at 6. The Pierces ask this Court to certify the following question to the New Mexico Supreme Court: does the UPA class remedy, § 57-12-10(E), allow the Subclass A Policy Reformation members as a class to recover statutory damages in the absence of any showing of actual damages? Objection at 15.

In *Page & Wirtz Constr. Co. v. Solomon*, 110 N.M. 206, 212 (1990), the New Mexico Supreme Court interpreted § 57-12-10(B) to mean that a person who had no evidence of actual damages could pursue statutory damages in the sum of $100.00. *See also Jones v. Gen. Motors Corp.*, 124 N.M. 606, 611 (Ct. App. 1998) (same); *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 445–46 (Ct. App. 2007) (same). These three decisions did not address the damages issue for UPA class actions under § 57-12-10(E).

In *Brooks v. Norwest Corp.*, 136 N.M. 599, 613 (Ct. App. 2004), the New Mexico Court of Appeals discussed § 57-12-10(E) in reference to certification issues and commented that "[i]ndividuals who sue under the UPA, as opposed to members who sue as a class, are entitled to collect more than their actual damage." In support of this proposition, the Court of Appeals cited § 57-12-10(E), which the Court of Appeals interpreted as "limiting the recovery of statutory and treble damages in class action to named plaintiffs." *Id.* The Court of Appeals further explained: "[c]onversely, any relief realized by class *members* is limited to actual damages; *they are barred from collecting statutory or treble damages*." *Id.* (emphasis added).

The holdings of *Page & Wirtz, Jones, and Lohman*, along with the language in *Brooks*, support this Court's conclusion that § 57-12-10(E) limits unnamed class members to claims of

actual damages. *See also Stanforth, et al. v. Farmers Ins. Co. of Az.*, 09-CV-1146 at 11–12 (Doc. No. 146) (D.N.M. Jan. 10, 2014) (unpublished) (rejecting similar argument by the Pierces' attorney and holding that the UPA does not permit unnamed class members to recover statutory damages).[5] Thus, the Court declines the Objectors' request to certify a question to the New Mexico Supreme Court. The Court also rejects the Objectors' argument that the proposed settlement extinguishes a valid UPA class claim based on the Court's finding that the Subclass A Policy Reformation Members cannot bring a class claim under § 57-12-10(E) for class-wide statutory damages. Consequently, the Court overrules the Pierces' Objection to this effect.

b. <u>Consideration for Relinquishment of Individual UPA Claims</u>

The Court remains concerned that the Pierces have not received any consideration for the relinquishment of their individual UPA claims. The Settlement Agreement specifically articulates a single benefit to Subclass A Policy Reformation Members – that of reformation of the Safeco policies from 2004 to 2014. Settlement Agreement at 15. In the Motion for Final Approval, Plaintiffs argue that "Class Members are given notice of the potential for monetary benefits and the equalization of UM/UIM coverage up to liability limits in each respective policy for the Class Period …." Motion for Final Approval at 16. Plaintiffs also believe that notification of the settlement and the opportunity to opt out of the settlement to pursue individual UPA claims are benefits to the Subclass A Policy Reformation Members. Plaintiff's Response at 17, 19.

At the Fairness Hearing, the Court asked the parties' counsel to describe the benefits that Subclass A Policy Reformation Members received as a result of the settlement. Counsel argued

---

[5] In *Stanforth*, the objectors' counsel filed an appeal from the Court's Final Order Approving Settlement. No. CIV 09-1146 RB/RHS. On September 28, 2015, counsel presented oral argument to the Tenth Circuit Court of Appeals. Objection at 7 n.3. Counsel in this case were not certain if the Tenth Circuit would issue a ruling in *Stanforth* as to the UPA class damages issue. Minutes, 10/18/15 Fairness Hearing (Doc. No. 96).

that the notice of the settlement itself was beneficial since non-claimant policyholders were alerted that they might have a claim. For example, as a result of the notice, a Subclass A Policy Reformation Member might become aware that a passenger in a car was entitled to obtain coverage for a claim. The parties' counsel also argued that Subclass A Policy Reformation Members receive additional insurance at no extra charge and that retroactive policy reformation is a benefit. It also might be said that the notice to the *Casados* class, if read and understood, benefitted the Subclass A Policy Reformation Members by educating them about their rights under New Mexico insurance law. However, this argument, even if persuasive, was not made.

The Court is hard-pressed to articulate any genuine benefit or consideration that Subclass A Policy Reformation Members receive in exchange for giving up possible UPA claims as a result of the settlement. Subclass A Policy Reformation Members can protect their individual interests by opting out of the settlement to pursue UPA claims, but the opt-out provision alone does not evince fairness of the Settlement Agreement or relieve the Court from having to find that the Settlement Agreement is fair. Moreover, the argument that there is a benefit from reformation of outdated insurance policies, under which no claims can be made, seems quixotic. The Court also rejects the parties' position that the notice benefits the Subclass A Policy Reformation Members by informing them of claims they did not realize they had. This might convert some Subclass A Policy Reformation Members to Subclass B Claimants, but it still begs the question of what benefits the remaining Subclass A Policy Reformation Members receive in exchange for giving up possible UPA claims.

Notwithstanding the parties' arguments to the contrary, the Court finds that the Settlement Agreement provides the Subclass A Policy Reformation Members with "a big fat zero." *See Mirfasihi*, 551 F.3d at 785. They receive absolutely nothing of value in exchange for

relinquishing individual UPA claims. The Court cannot understand why the parties need to include Subclass A Policy Reformation Members as a part of the Settlement Agreement, if not to extinguish many thousands of possible UPA claims at no cost to Safeco or to the parties. The Court is skeptical of the strength of the Subclass A Policy Reformation Members' individual UPA claims, as well as the possible motivation underlying the threat of UPA claims.[6] But, the Court determines that the Objectors have sufficiently alleged possible violations of the UPA. *See* Objection at 9–15 (describing grounds for UPA claim). This finding is bolstered by Plaintiffs' original claims under the UPA and their vigorous opposition to the motion to dismiss Mulvaney's similar UPA claims. *See* Response to Motion to Dismiss (Doc. No. 41). C*ompare Mirfasihi*, 551 F.3d at 685, 686 (approving the settlement as fair after finding the objectors' claims were "indeed worthless," particularly in view of the objectors' inability after eight years of litigation to identify "a single member of the class who would sue on his own dime to collect the modest statutory damages available in an individual suit.").

Admittedly, three of the four factors to be addressed weigh in favor of approving the Settlement Agreement. S*ee* discussion *supra*. However, the Court finds the analysis of whether

---

[6] In *Mirfasihi*, Judge Posner examined a class settlement approval question with respect to two classes, one with monetary damages and one without monetary damages. *Mirfasihi*, 356 F.3d at 782. Similar to this case, the objector in *Mirfasihi* argued that the one class "received absolutely nothing, while surrendering all its members' claims against [the defendant]." Judge Posner wondered it if it "would be too cynical to speculate that what may be going on here is that class counsel wanted a settlement that would give them a generous fee and [Defendant] wanted a settlement that would extinguish 1.4 million claims against it at no cost to itself?" *Id.* at 785. In later affirming the district court's fairness finding in *Mirfasihi,* Judge Posner expressed his discouragement with the "typical pathology of class action litigation."

> The lawyers for the class could not concede the utter worthlessness of their claim because they wanted an award of attorney's fees. The lawyers of [the defendant] were reluctant to argue the utter worthlessness of the claim because they were able to negotiate a settlement that cost their client virtually nothing — provided they did not take such a strong stand that it jeopardized the class lawyers' shot at a generous award of attorneys' fees. And the objectors were motivated to exaggerate the value of the claim of the [class without monetary damages] so that they could get a generous award of attorneys' fees."

*Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 686–87 (7th Cir. 2008). This Court similarly wonders about motivations.

the Subclass A Policy Reformation Members receive something of immediate value in exchange for giving up possible UPA claims to be key in determining the fairness of this Settlement Agreement. The Subclass A Policy Reformation Members would receive an "immediate recovery" of nothing of value under the Settlement Agreement. Therefore, the Court concludes that the Subclass A Policy Reformation Members could very well attain a more favorable outcome after further litigation. *Compare Tennille*, 785 F.3d at 435 (approving settlement as fair where although class members released possible claims against the defendant these class members were able to recover "almost all of the direct damages that they would have recovered if they had succeeded at trial"). The Court must be vigilant in ensuring that the rights of passive class members are not jeopardized and must scrutinize settlements where class members "may not have been given adequate consideration during the settlement negotiations." *See In re New Mexico Natural Gas Antitrust Litig.*, 607 F. Supp. at 1497. After conducting a probing inquiry, the Court concludes that the Settlement Agreement is not "fair, reasonable, and adequate" to the Subclass A Policy Reformation Members. *See* Fed. R. Civ. P. 23(e)(2). Therefore, the Court will sustain the Pierces' Objection regarding Subclass A Policy Reformation Members.

### D.  Jurisdiction of the Court

The Pierces identify this Court's lack of jurisdiction to grant declaratory relief as their "core argument for opposing" the settlement. Objection at 2. The Court construes this argument as an objection to the Court's power to adjudicate the Subclass A Policy Reformation Members' claims for declaratory relief – whether through ordinary class litigation or through the approval of the proposed class action settlement. *See* Objection at 24 ("[T]his Court should . . . hold that there is no federal jurisdiction to enter a declaratory judgment reforming any Safeco UM policies issued to the non-claimant Class A Members, where by definition, none of these Class A

Members are, or ever have been, entitled to assert any claim for UM benefits during the Class Period.").[7] The Pierces take the position that the Court lacks jurisdiction because a large percentage of the Subclass A Policy Reformation Members did not suffer monetary harm from Safeco's failure to provide equalized UM/UIM coverage and would not, therefore, have standing to independently seek declaratory relief regarding Safeco's insurance practices.

This argument is fundamentally flawed as it rests on the assumption that a court lacks jurisdiction over a class if the unnamed members of this class do not have individualized standing to bring claims. While some circuits have adopted this approach to class action standing requirements, *see*, *e.g.*, *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (opining that a class must be "defined in such a way that anyone within it would have standing"), the Tenth Circuit has not. Under Tenth Circuit case law, a court enjoys jurisdiction over a Rule 23(b)(2) class as long as one of the named plaintiffs has standing to seek injunctive or declaratory relief. *Devaughn*, 594 F.3d at 1197 ("[O]nly named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing . . ."). Absent class members need not make any individual showing of standing in order to be included in a class seeking non-monetary relief. *Colo. Cross-Disability Coalition*, 765 F.3d at 1214 ("[A]uthorities support the notion that class 'standing' does not require individualized proof from class members."); *see also Morris v. DaVita Healthcare Partners, Inc.*, 308 F.R.D. 360, 368 (D. Colo. 2015) ("[F]or

---

[7] The Court's construction is also consistent with the Pierces three reasons for arguing that the Court lacks jurisdiction: (1) "neither the Class Representative nor any of the Class A Members have Article III standing to assert . . . a right to . . Declaratory Relief on behalf of . . . non-claimant Class A Members," (2) granting Subclass A declaratory relief will not resolve a live case or controversy, and (3) the claims of Subclass A class members are not ripe for adjudication. Objection at 2. Moreover, as the parties point out, the question is not whether the Court possesses jurisdiction to enforce each term of the Settlement Agreement. The question is whether this Court possesses jurisdiction over the claims asserted by the Subclass A Policy Reformation Members. If the Court has jurisdiction over this subclass and its claims, it has jurisdiction to evaluate a settlement agreement involving these claims. *See Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1563 (3d Cir. Pa. 1994) ("[I]t is widely recognized that courts without jurisdiction to hear certain claims have the power to release those claims as part of a [class settlement]").

purposes of 23(b)(2) certification, only the named plaintiffs must demonstrate that they have been injured, and DaVita's argument that many putative class members were not injured is immaterial to the standing analysis.").

Here, the parties ask the Court to certify the Subclass A Policy Reformation Members under Rule 23(b)(2) on the basis that Safeco "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Pierces do not challenge the propriety of Rule 23(b)(2) certification and do not dispute that Plaintiff Casados, who was injured in a car accident and denied UM/UIM benefits, has standing to seek declaratory relief regarding Safeco's allegedly unlawful insurance practices. Because Plaintiff Casados has standing to seek declaratory relief on behalf of the Subclass A Policy Reformation Members regarding the legality of Safeco's conduct, the Court has jurisdiction to adjudicate the claims of the class without requiring proof that each absent class member would have individual standing to bring suit. *See Colo. Cross-Disability Coalition*, 765 F.3d at 1214 ("Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.") (quoting *Lewis v. Casey*, 518 U.S. 343, 395-96 (1996) (Souter, J., concurring)).

It follows that the Pierces' objections to the Court's jurisdiction lack merit under controlling Tenth Circuit law. Therefore, the Court overrules the objections to jurisdiction.

### E.  Notice

It is not clear whether the Objectors challenge the form of the Class Notice that the parties distributed. The Pierces seem to take issue with the Notice insofar as it might have

29

released claims against the previously dismissed Liberty Defendants. *See* Objection at 3–4. As noted earlier, the parties represented that the Notice concerned claims against Safeco and did not include claims against the Liberty Defendants. *See, e.g.,* Safeco's Response at 15. Thus, the Court overrules any Objection based on a purported release of claims against the Liberty Defendants.

The Court concludes that the Notice was adequate and gave all class members sufficient information to allow them to make informed decisions as to the parties' proposed settlement. The Notice provided information about the class members' right to object and the right to opt out of the settlement. *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005). Therefore, the Court finds that the parties' Final Class Notice of the class action settlement satisfied the requirements of due process under the Constitution and Rule 23(e).

**Subclass B Claimants**

The Court concludes that all of the Rule 23(a) and (b) prerequisites are met with respect to the Subclass B Claimants. *See* discussions *supra*. The Court also finds that the Settlement Agreement is "fair, reasonable, and adequate" as to the Subclass B Claimants and believes the Settlement Agreement should be approved as to the Subclass B Claimants.[8] However, the Court does not know if the Subclass B Claimants will proceed under the terms of the settlement in view of the Court's decision not to approve the Settlement Agreement as to the Subclass A Policy Reformation Members. *See* Settlement Agreement at 34 (stating that the parties or Safeco may terminate the Settlement Agreement if the parties determine any of the terms of the Settlement

---

[8] The Pierces state that they do not oppose the portion of the Settlement Agreement that provides UM/UIM benefits to Subclass B Claimants who suffered injuries or losses during the relevant period. Objection at 1.

Agreement are "materially impaired"). Thus, the parties should inform the Court how they wish to proceed with respect to the proposed settlement.

### Conclusion

Rule 23(a) and (b) requirements for class certification are satisfied, both with respect to Subclass A Policy Reformation Members and Subclass B Claimants. However, while the Court would approve the settlement as fair under Rule 23(e) as it pertains to Subclass B Claimants, the Court does not approve the settlement for Subclass A Policy Reformation Members.

The Court confirms that it has jurisdiction over this case and the parties to it.

The Court defers ruling on the Motion for Attorney's Fees until the parties clarify how they wish to proceed in light of the Court's rulings.

IT IS ORDERED THAT:

1. The Court SUSTAINS in part and OVERRULES in part the OBJECTION TO THE FINAL APPROVAL OF THE CASADOS CLASS SETTLEMENT AGREEMENT ON BEHALF OF SAFECO OBJECTORS MARK AND AMANDA PEIRCE AND LIBERTY MUTUAL OBJECTOR JEFFREY BROWN (Doc. No. 84);

2. The Court denies Plaintiff's MOTION FOR FINAL APPROVAL OF SETTLEMENT (Doc. No. 88) with respect to the Subclass A Policy Reformation Members;

3. The Court approves certification of the Subclass B Claimants; and

4. The Court approves the WITHDRAWAL of Jeffrey Brown's Objection (Doc. No. 84).

SENIOR UNITED STATES DISTRICT JUDG